**Ramon Manzano CORTEZ and Maria De Jesus Hernandez, Individually and as Next Friend of Anastacio Manzano Hernandez, Appellants,**

v.

**WEATHERFORD INDEPENDENT SCHOOL DISTRICT, Linda Gerdes and Linda Baumgartner, Appellees.**

No. 02–95–148–CV.

Court of Appeals of Texas, Fort Worth.

June 13, 1996.

Eloy Sepulveda, Fort Worth, Richard L. Arnold, John W. Henvey, Dallas, for Appellant.

David J. Labrec, Mark M. Donheiser, D. Randall Montgomery, Dallas, for Appellee.

Before LIVINGSTON, DAUPHINOT and BRIGHAM, JJ.

## OPINION

DAUPHINOT, Justice.

This is a wrongful death suit brought by Appellants Ramon Manzano Cortez and Maria De Jesus Hernandez individually and as next friend of Anastacio Manzano Hernandez against Weatherford Independent School District and two of its employees, Linda Gerdes and Linda Baumgartner. In their petition, Appellants claimed that Appellees were negligent when a passing motorcycle struck and killed Guadalupe Manzano Hernandez, moments after he was unloaded from a school bus. The three Appellees moved for summary judgment, asserting governmental and official immunity. After a hearing, the trial court granted Appellees' motion for summary judgment. Because we find, based on the record before us, that Gerdes and Baumgartner were performing a discretionary function, that the decision by Weatherford I.S.D. not to install a stop arm on the bus was discretionary, and that no fact issues exist, we overrule Appellants' points of error and affirm the trial court's summary judgment.

### Relevant Facts

On February 6, 1992, six-year-old Guadalupe Manzano Hernandez rode the bus home from school. Guadalupe was accompanied by his older brother Anastacio. The school bus was owned and operated by Weatherford I.S.D. Driving the bus that day for Weatherford I.S.D. was Linda Gerdes, a substitute bus driver. Also on board was another Weatherford I.S.D. employee Linda Baumgartner, who was the regular bus driver but, because of an injury, was on the bus as a monitor.

As the bus ride through rural Parker County continued, a motorcycle driven by Roy Jones began to follow the bus. Gerdes stated in her deposition that she first heard the motorcycle behind the bus at the stop before Guadalupe's. Both Gerdes and Baumgartner testified in their depositions that Jones had a reputation in the community for showing off behind buses and was known to go around buses when they were pulling up for a stop. Baumgartner even stated that in one such incident she had almost hit Jones.

Finally, the bus reached Guadalupe's home and he and Anastacio exited. The two boys crossed in front of the school bus and as Guadalupe proceeded past the bus and onto a trail that ran along the side of the road, he was struck by Jones's motorcycle and killed.

Based on this incident, Guadalupe's family brought suit against Weatherford I.S.D., Gerdes, and Baumgartner. Appellants contended that the accident arose from the operation or use of the school bus. They alleged that Appellees were negligent for failing to activate warning lights on the rear of the bus and, generally, for allowing Guadalupe to unload from the bus and attempt to proceed across the street as he did. Appellants also alleged that Weatherford I.S.D. was negli-

gent for failing to have the bus equipped with a stop arm.

Appellees collectively filed a motion for summary judgment in which Gerdes and Baumgartner asserted the affirmative defenses of common law official immunity and immunity under section 21.912 of the Texas Education Code.[1] Likewise, Weatherford I.S.D. asserted immunity under the doctrine of sovereign immunity, contending that Appellants' claims did not fall into an exception to immunity created by the Texas Tort Claims Act.[2] After a hearing, the trial court granted Appellees' motion for summary judgment.

On appeal, Appellants complain in six points of error that the trial court erred in granting summary judgment. More specifically, they contend that the trial court erred in granting Appellees' summary judgment because (1) Gerdes and Baumgartner were performing a ministerial function and not a protected discretionary one, and (2) the incident arose out of the operation or use of the bus and, therefore, sovereign immunity is waived as to Weatherford I.S.D. Additionally, Appellants assert that fact issues exist regarding the lack of a stop arm on the bus and the alleged nonuse of warning lights on the bus.

### Summary Judgment Standard of Review

■ In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[3] The burden of proof is on the movant,[4] and all doubts about the existence of a genuine issue of a material fact are resolved against the movant.[5] Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.[6] When a defendant moves for summary judgment on the basis of an affirmative defense, as each Appellee did in the case before us, she must conclusively prove all essential elements of that defense.[7] When reviewing a summary judgment granted on general grounds, as this one was, the court considers whether any theories set forth in the motion will support the summary judgment.[8]

### Official Immunity

■ Gerdes and Baumgartner moved for summary judgment on their affirmative defense of official immunity. Government employees are entitled to official immunity from a suit arising from the performance of their discretionary duties in good faith as long as they are acting within the scope of their authority.[9] The purpose of official immunity is to insulate the functioning of government from the harassment of litigation, not to protect erring officials.[10] Although to be entitled to summary judgment Gerdes and Baumgartner had the burden of proving all three elements conclusively,[11] on appeal Appellants only contest whether the duties performed were discretionary.

1. TEX. EDUC. CODE ANN. § 21.912 (Vernon 1987) (subsequently repealed and recodified at TEX. EDUC. CODE ANN. § 22.051 (Vernon Pamph.1996)).

2. The Texas Tort Claims Act is codified beginning at TEX. CIV. PRAC. & REM. CODE ANN. § 101.001 (Vernon 1986 & Supp.1996).

3. See TEX.R. CIV. P. 166a(c); Cate v. Dover Corp., 790 S.W.2d 559, 562 (Tex.1990); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979).

4. Acker v. Texas Water Comm'n, 790 S.W.2d 299, 301–02 (Tex.1990).

5. Cate, 790 S.W.2d at 562; Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.1965).

6. Great Am., 391 S.W.2d at 47.

7. Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972).

8. State Farm Fire & Casualty Co. v. S.S., 858 S.W.2d 374, 380 (Tex.1993).

9. City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.1994).

10. Kassen v. Hatley, 887 S.W.2d 4, 8 (Tex.1994) ("The public would suffer if government officers, who must exercise judgment and discretion in their jobs, were subject to civil lawsuits that second-guessed their decisions.").

11. See Swilley, 488 S.W.2d at 67.

■ As a general rule, official immunity attaches to a government employee's official actions only when the employee's job requires the exercise of personal judgment or discretion.[12] On the other hand, a government employee's performance of duties that are merely ministerial in nature is not cloaked with official immunity.[13] The distinction between these two categories is necessarily one of degree, because any official act that is ministerial still requires the actor to use some discretion in its performance.[14] In fact, even the Texas Supreme Court has acknowledged that labelling an official's acts as discretionary is probably only a shorthand notation for a more complex policy decision.[15] With that in mind, the Court, in attempting to differentiate between the two terms, stated that: "If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial."[16]

■ A ministerial act has been found "where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment."[17] Therefore, a significant aspect in determining whether the act is ministerial or discretionary involves searching for a law or regulation that controls the act of the official.[18]

■ In the case before us, Gerdes and Baumgartner offered into summary judgment evidence the "Course Guide for School Bus Driver Training in Texas." This course guide was approved jointly by the State Board of Education and the Texas Department of Public Safety, and is provided to school bus drivers at their training course. The index to the course guide defines how a reader is to construe its contents and states that "[w]here the word 'should,' 'may,' or 'can,' is used, it is permissible or optional." The course guide goes on to describe the process of unloading students on the left side of the roadway:

> Parents of students in kindergarten and the lower elementary grades living across the roadway from the bus stop have the responsibility to escort these students from the bus stop across the roadway. However, if the parents do not assume the responsibility and a traffic light or an adult crossing guard is not present, *the driver should assume the responsibility for the safety of the students.* In dangerous areas, students in the upper elementary grades should also be escorted across the roadway. [Emphasis added.]

The course guide then outlines a "recommended" procedure for instances when the bus driver elects to assist the children in crossing the street. Importantly, the course guide does not create a specific policy on how bus drivers are to unload students. Rather, the language of the course guide leaves such issues to the discretion of the bus drivers.

Consistent with the course guide is the deposition testimony of Appellants' expert witness Richard Turner. Turner, a busing consultant for various boards, testified that a bus driver's decision on how to unload students is a discretionary function:

> Q Okay. So to now get to where I think what we've said. Then depending on the circumstance and depending on the age of the child and the situation that's before them due to traffic, what have you, a school bus driver has to make a decision as to whether or not to get off the bus and to escort that child across the street, correct?
>
> A Correct.
>
> Q And kind of what we've talked about before, they have to use their judgment in that situation and use their discretion and

12. *Travis v. City of Mesquite,* 830 S.W.2d 94, 102 (Tex.1992) (Cornyn, J., concurring).

13. *Id.*

14. *Chapman v. Gonzales,* 824 S.W.2d 685, 687 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

15. *Kassen,* 887 S.W.2d at 9.

16. *City of Lancaster,* 883 S.W.2d at 654.

17. *Miller v. State,* 53 S.W.2d 838, 840 (Tex.Civ. App.—Amarillo 1932, writ ref'd).

18. *Harris County v. DeWitt,* 880 S.W.2d 99, 101 (Tex.App.—Houston [14th Dist.] 1994), *aff'd,* 904 S.W.2d 650 (Tex.1995).

make a decision as to whether or not that's the time to get off and do that?

A   Correct.

. . . .

Q   And walking children across the street was an optional or a permissive function, correct?

A   Yes.

Based on the evidence presented, we find that Gerdes and Baumgartner met their summary judgment burden of conclusively establishing that their act of unloading Guadalupe was a discretionary function. Importantly, Appellants failed to offer any summary judgment evidence of a policy or regulation creating a duty that Gerdes and Baumgartner were merely attempting to implement.[19]   Therefore, we hold that Gerdes and Baumgartner are entitled to official immunity for the act of unloading Guadalupe.   Also, then, Weatherford I.S.D. is immune for those same acts because its employees could not be personally liable to the claimants.[20]

### Sovereign Immunity

█   Appellants allege in their petition that Weatherford I.S.D. was negligent for failing to "provide a stop arm on the school bus." Appellants assert that because this incident arose out of the operation or use of a motor-driven vehicle, sovereign immunity for Weatherford I.S.D. is waived under the Texas Tort Claims Act.[21]  Weatherford I.S.D., however, contends that the Act does not apply to Appellants' claim because section

101.056, entitled "Discretionary Powers," provides an exception to the waiver of governmental immunity:

This Chapter does not apply to a claim based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.[22]

The Act, then, does not apply when a governmental unit exercises its discretionary power. The Texas Supreme Court stated that the purpose of section 101.056 is "to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions."[23]

In general, the courts of this state have held that decisions made at a policy level instead of an operational level are exempt as policy decisions.[24]   The Supreme Court of Texas pointed out that the deciding question is whether the allegedly negligent conduct involves policy formulation or policy implementation.[25]   That is because an entity's negligent formulation of policy is immune from liability, while the negligent implementation of a policy will subject an entity to liability.[26]  This corresponds to the rule that once a government has decided to perform a discre-

---

**19.**   Based on the record before us, we feel compelled to find that Weatherford I.S.D.'s employees were carrying out a discretionary function in unloading Guadalupe.   The record demonstrates that Weatherford I.S.D. does not have a formal policy creating a specific duty on its bus drivers to oversee the safety of its students when unloading, but rather, this responsibility is left to the discretion of the bus drivers.

**20.**   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1986); *City of Lancaster,* 883 S.W.2d at 658.

**21.**   TEX. CIV. PRAC. & REM CODE ANN. §§ 101.021, 101.051 (Vernon 1986).

**22.**   TEX. CIV. PRAC. & REM. CODE ANN. § 101.056 (Vernon 1986).

**23.**   *State v. Terrell,* 588 S.W.2d 784, 787 (Tex. 1979) ("[t]he interests to be served by these provisions are several—e.g., effective, unfettered performance of officials in making policy decisions and the maintenance of the separation of powers between the executive, legislative, and judicial branches of government").

**24.**   *McKinney v. City of Gainesville,* 814 S.W.2d 862, 866 (Tex.App.—Ft. Worth 1991, no writ).

**25.**   *Terrell,* 588 S.W.2d at 787.

**26.**   *Alvarado v. City of Brownsville,* 865 S.W.2d 148, 156 (Tex.App.—Corpus Christi 1993), *rev'd on other grounds,* 897 S.W.2d 750 (Tex.1995).

tionary act, the act must be performed in a nonnegligent manner.[27]

On this question, Weatherford I.S.D. presented the affidavit of Ron Dyer. Dyer, a specifications technician for General Services Commission of Texas in 1992, stated that he was involved with developing and implementing the "Specifications for School Buses." He testified that at the time of the incident, a stop arm was considered an "optional feature" on a school bus. Dyer stated that, although all new buses are now required to be outfitted with a stop arm, there has never been a requirement that existing buses be "retrofitted" with a stop arm. Similarly, Turner testified that at the time of the incident, a stop arm was not required: "It's an option, a safety option that can be utilized if the school district wants to."

The uncontroverted evidence of Weatherford I.S.D. regarding their decision to not equip the bus with a stop arm establishes conclusively that the school district was not required to have a stop arm on the bus at the time of the incident. Consequently, we hold that Weatherford I.S.D.'s decision was an exercise of its discretionary powers and not subject to the Act's limited waiver of immunity.[28]

### Fact Question

■ Appellants contend that the trial court erred in granting the summary judgment because a fact issue still exists concerning whether the bus's rear warning lights were on. Appellants correctly assert that there appears to be a conflict in the record on this question because while Jones, the motorcyclist, testified that the bus's warning lights were not on, Gerdes, the bus driver, stated that the lights were on. Normally this conflict would create a fact question for the jury. But, in this case, we must also consider the deposition testimony of plaintiff Maria De Jesus Hernandez.

Hernandez expressly testified in her deposition that at the time of the incident, she saw both sets of lights (the red lights on the top rear of the bus and the yellow flashing caution lights) on:

A [Y]es, I did see the yellow lights. She used to put them on before she got to the back entrance.

Q So on the day of the accident when you looked out your window, you saw the yellow lights on before you got to the back entrance and then you eventually saw the red lights turn on when she stopped?

A Yes.

Q And that was the usual procedure they used each and every time they dropped your children off in the afternoons, correct?

A Yes.

Hernandez's testimony is clear that she believed the bus lights were on that day.

■ The Texas Supreme Court has held that a party's testimonial declarations that are contrary to her position are quasi-admissions and, generally, treated merely as some evidence.[29] But if the quasi-admission meets certain requirements, then recovery is precluded as a matter of public policy.[30] Underlying this public policy decision is the notion that it would be unjust to allow a party to recover after she has sworn herself out of court by clear, unequivocal testimony.[31] Therefore, a quasi-admission will be treated as a judicial admission if it appears that:

(1) The declaration relied upon was made during the course of a judicial proceeding.

(2) The statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony.

(3) The statement is deliberate, clear, and unequivocal. The hypothesis of mere mistake or slip of the tongue must be eliminated.

---

**27.** *Norton v. Brazos County*, 640 S.W.2d 690, 693 (Tex.App.—Houston [14th Dist.] 1982, no writ).

**28.** Tex. Civ. Prac & Rem. Code Ann. § 101.056 (Vernon 1986).

**29.** *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex.1980).

**30.** *Id.*

**31.** *Id.*

(4) The giving of conclusive effect to the declaration will be consistent with the public policy upon which the rule is based.

(5) The statement is not also destructive of the opposing party's theory of recovery.[32]

We find that Hernandez's testimony meets the above requirements and, therefore, eliminates what otherwise would have been a disputed fact issue regarding the use or non-use of the bus's warning lights. Consequently, we overrule Appellants' points of error and affirm the trial court's summary judgment.