**Marcos MONTOYA et ux, Paula Montoya, Individually and as Next Friends of Marcos Montoya, Jr., Appellants,**

v.

**HOUSTON INDEPENDENT SCHOOL DISTRICT and Veronica Dampha, Appellees.**

No. 01–04–00824–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 31, 2005.

---

S. Mark Strawn, Ajamie LLP, Houston, TX, for Appellants.

Joseph A. Callier, Callier & Garza, LLP, Houston, TX, for Appellees.

Panel consists of Justices NUCHIA, JENNINGS and ALCALA.

1. Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001(3)(B), 101.021, 101.025, 101.051

## OPINION

TERRY JENNINGS, Justice.

In this accelerated, interlocutory appeal, appellants, Marcos Montoya et ux, Paula Montoya, Individually and as Next Friends of Marcos Montoya, Jr. (the "Montoyas"), challenge the trial court's order granting a plea to the jurisdiction in favor of appellee, Houston Independent School District (HISD), on the Montoyas' claims against HISD for injuries sustained by Marcos Montoya, Jr. ("Marcos") when he fell from the emergency exit of an HISD school bus. In four issues, the Montoyas contend that the trial court erred in granting HISD's plea to the jurisdiction on the grounds of governmental immunity from suit because the Texas Tort Claims Act[1] waives such immunity from suit for personal injuries arising "from the operation or use of a motor-driven vehicle." We affirm the trial court's order.

### Factual and Procedural Background

As stated in the Montoyas' first amended petition, on May 15, 2002, Marcos sustained personal injuries when he fell from the emergency exit of a moving school bus owned by HISD and driven by an HISD employee. At the time of the incident, Marcos was eight years old and enrolled in special education in HISD. He had previously been diagnosed with mental retardation and other mental handicaps. Prior to the incident, Marcos had a history of aggressive behavior on the school bus, including a history of leaving his seat on the bus, running around on the bus, and attempting to exit the bus using the emergency exit.

On April 4, 2002, HISD equipped Marcos's school bus seat with a special child-

(Vernon 1997 & Supp.2004–2005).

proof harness to restrain him. However, the harness did not effectively restrain Marcos, and, on May 5, 2002, Marcos was able to free himself from the harness. On May 14, 2002, the day before the incident, Marcos freed himself from the harness and opened the rear emergency exit door of the bus, but did not fall out of the bus. The next day, on May 15, 2002, Marcos again freed himself from the harness and, while the bus was in motion, opened and fell through the emergency exit, sustaining the personal injuries giving rise to this lawsuit.

The Montoyas sued HISD and the HISD bus driver (collectively "HISD"), alleging that HISD was negligent in the operation or use of Marcos's school bus.[2] In their first amended petition, the Montoyas alleged that HISD was negligent in the following ways:

a. failing to properly use the childproof harness restraining Marcos;

b. failing to maintain a reasonable lookout, and notice that Marcos had disengaged the harness;

c. failing to stop the bus before Marcos reached the emergency exit, opened it, and fell through it;

d. failing to equip the bus with an adequate restraining device; and

e. failing to instruct the bus driver in the proper use of the harness.

HISD filed an answer pleading as a defense "all the exemptions and exceptions from, and limitations on, liability provided in the Texas Tort Claims Act." Contemporaneously with filing its answer, HISD filed a motion to dismiss and plea to jurisdiction, asserting that HISD was entitled to governmental immunity and that the trial court lacked jurisdiction to hear the Montoyas' claim. HISD further asserted that Marcos's injuries did not arise from the operation or use of a motor-driven vehicle, and thus the Montoyas' allegations did not trigger a waiver of HISD's immunity under the Texas Tort Claims Act.

The Montoyas filed a response to HISD's plea to jurisdiction, arguing that their allegations arose from the operation or use of a motor-driven vehicle and thus HISD's immunity was waived. After HISD filed a reply to the Montoyas' response, the trial court conducted a hearing on HISD's plea to the jurisdiction, and entered an order granting HISD's plea.

### Standard of Review

▇▇▇ Governmental immunity from suit defeats a trial court's subject matter jurisdiction. *Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex.2004); *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003). Whether a party has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed de novo. *Miranda*, 133 S.W.3d at 226.

▇▇▇ "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Whitley*, 104 S.W.3d at 542. In reviewing the pleadings to determine whether a party has alleged facts that affirmatively demonstrate the court's jurisdiction and a valid waiver of immunity, the reviewing court must construe the pleadings liberally in favor of the pleading party and must also look to the intent of the pleading party. *Miranda*, 133 S.W.3d at 226.

---

2. As stated in the Montoyas' brief, the HISD bus driver, Veronica Dampha, was named as a defendant but did not file an answer, and the Montoyas filed a voluntary dismissal of their claims against Dampha.

### Waiver of Governmental Immunity

In issues one through four, the Montoyas argue that the trial court erred in granting HISD's plea to the jurisdiction because their allegations that HISD was negligent in failing to timely stop the bus, maintain a reasonable lookout, and properly use a child-proof harness state a claim for personal injuries arising from HISD's operation or use of the bus, and the Texas Tort Claims Act specifically waives governmental immunity from suit for such claims. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1997).

HISD, a governmental unit, is immune from liability for Marcos's injuries unless that immunity has been waived by the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001, 101.021, 101.025, 101.051 (Vernon 1997 & Supp. 2004–2005); *Whitley*, 104 S.W.3d at 542; *LeLeaux v. Hamshire–Fannett Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992). The Texas Tort Claims Act provides, in relevant part:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

   (A) the property damage, personal injury, or death *arises from* the *operation or use of a motor-driven vehicle* or motor-driven equipment; and

   (B) the employee would be personally liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1) (Emphasis added).

The waiver of immunity set forth in section 101.021(1) has been construed by Texas courts to be a limited waiver. *LeLeaux*, 835 S.W.2d at 51. Thus, pursuant to this limited waiver, a school district is liable for a personal injury proximately caused by a negligent employee *only* if the injury arises from the operation or use of a motor-driven vehicle or motor-driven equipment. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1)(A). While the terms "use" and "operation" are not defined in the Act, the supreme court has defined "use" as "to put or bring into action or service; to employ for or apply to a given purpose" and has defined operation as "a doing or performing of a practical work." *Whitley*, 104 S.W.3d at 542; *LeLeaux*, 835 S.W.2d at 51. The supreme court has also explained that the "arises from" language in section 101.021(1)(A) requires "a nexus between the injury negligently caused by a governmental employee and the operation or use of the motor-driven vehicle or piece of equipment." *LeLeaux*, 835 S.W.2d at 51; *see also Whitley*, 104 S.W.3d at 543; *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 619 (Tex.1987). "This nexus requires more than mere involvement of property." *Whitley*, 104 S.W.3d at 543. Rather, the use of the vehicle "must have actually caused the injury." *Id.* The operation or use of a motor-driven vehicle "does not cause injury if it does no more than furnish the condition that makes the injury possible." *Id.* (citing *Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998)). Additionally, while the statute does not expressly state whose operation or use of the vehicle or equipment is necessary, the supreme court has noted that "the more plausible reading is that the required operation or use is that of the [governmental] employee." *LeLeaux*, 835 S.W.2d at 51.

The Montoyas make three specific allegations as to how Marcos's injuries arose from HISD's negligent operation or use of the school bus. First, the Montoyas allege that the HISD bus driver was negligent in

failing to timely stop the bus before Marcos opened the rear emergency door and fell from the moving bus. Second, the Montoyas allege that the HISD bus driver was negligent in failing to maintain a reasonable lookout while driving the bus. Third, the Montoyas allege that the HISD bus driver was negligent in failing to properly use a child-proof harness and restrain Marcos. In reviewing the order of the trial court granting HISD's plea to jurisdiction, we must take these allegations as true. *LeLeaux,* 835 S.W.2d at 52.

■ However, even assuming the truth of these allegations, the Montoyas have still failed to demonstrate that Marcos's injuries actually arose from the bus driver's operation or use of the bus. *LeLeaux,* 835 S.W.2d at 51. As to the Montoyas' first allegation, we cannot agree with the Montoyas' assertion that the bus driver's negligent failure to timely stop the school bus "is the very quintessence of an allegation which arises from the use or operation of a motor vehicle." While it is generally true that a driver's negligent failure to timely stop a vehicle to avoid a collision would relate to the operation of that vehicle, here the Montoyas' allegation concerns the bus driver's failure to stop the bus to prevent Marcos from opening the rear door and falling out of the bus. This allegation actually relates to the bus driver's duty to supervise and respond to Marcos's behavior on the bus, not the driver's operation or use of the bus itself. Furthermore, the Montoyas' argument, that Marcos's injuries would *not* have occurred if the bus had stopped prior to Marcos's exiting the emergency door, does not demonstrate that Marcos's injuries *arose from the operation of the bus.* For example, Marcos's injuries would not have occurred if he had not boarded the bus altogether. But an allegation to this effect would not be sufficient to demonstrate that Marcos's

injuries arose from the operation of the bus. In order to establish the required nexus, the Montoyas must allege that the bus driver's operation of the bus *actually caused* Marcos's injuries. *See Estate of Garza v. McAllen Indep. Sch. Dist.,* 613 S.W.2d 526, 528 (Tex.Civ.App.-Beaumont 1981, writ ref'd n.r.e.). Here, the Montoyas' allegation concerning the driver's failure to stop the bus, even when construed liberally, is not sufficient to establish a waiver of HISD's immunity.

■ The Montoyas' second allegation, that the bus driver negligently failed to maintain a reasonable lookout, also relates to the bus driver's duty to supervise the bus passengers and does not concern the actual operation or use of the bus. *Goston v. Hutchison,* 853 S.W.2d 729, 733 (Tex. App.-Houston [1st Dist.] 1993, no writ). In *Goston,* we concurred with the distinction made by the court in *Estate of Garza* that "when the allegations of negligence are related to the direction, control and supervision of the students, the suit is barred [and] when the allegations of negligence are related to the negligent use of the motor vehicle itself, the suit is not barred." *Id.* at 733 (citing *Estate of Garza,* 613 S.W.2d at 528). We conclude that the Montoyas' allegation concerning the driver's failure to maintain a reasonable lookout falls squarely into the category of cases related to the direction, control, and supervision of students. Moreover, the Montoyas' allegation regarding the bus driver's failure to keep a reasonable lookout fails to demonstrate the required nexus between the driver's negligent act and the injuries sustained by Marcos. *Whitley,* 104 S.W.3d at 543; *Hopkins,* 736 S.W.2d at 619.

■ Similarly, the Montoyas' third allegation, that the bus driver negligently failed to use the harness properly, does not relate to the driver's operation or use of

the bus. However, even assuming that the driver's negligent use of the harness constituted an operation or use of the bus, the negligent use was not the actual cause of Marcos's injuries.[3] The actual cause of Marcos's injuries was Marcos's affirmative act of opening and exiting the rear emergency door of the bus. At most, the driver's negligent use furnished the condition which enabled Marcos to exit the bus and injure himself. *See Whitley,* 104 S.W.3d at 543. Because this allegation does not demonstrate the critical nexus between the driver's negligent use of the harness and Marcos's fall from the bus, it is insufficient to support a waiver of HISD's immunity.

In the trial court proceedings and in their appellate briefing the Montoyas rely heavily on *Austin Ind. Sch. Dist. v. Gutierrez,* 54 S.W.3d 860 (Tex.App.-Austin 2001, pet. denied), and *Hitchcock v. Garvin,* 738 S.W.2d 34 (Tex.App.-Dallas 1987, no writ), both of which are distinguishable from the facts at hand. In *Gutierrez,* a school bus driver discharged a student from the bus and then honked the horn of the bus to indicate to the student that she could safely cross the road. *Gutierrez,* 54 S.W.3d at 861. After the bus driver's signal, the student attempted to cross the street and was struck and killed by a passing vehicle. *Id.* The court denied the school district's plea to the jurisdiction because the bus driver's "affirmative action of honking the horn," which may have contributed to the accident, constituted a use of the bus. *Id.* at 866. Similarly, in *Hitchcock,* a school bus driver failed to activate the bus flashers or warning sig-

nals prior to unloading a child. *Hitchcock,* 738 S.W.2d at 36. Immediately after exiting the bus, the child attempted to cross the street but was struck by another car. *Id.* at 37. The court held that the driver's failure to activate the flashers or warning signals of the school bus when the child was exiting constituted "an act or omission arising from the operation or use of a motor vehicle." *Id.*

Here, however, the Montoyas' allegations do not demonstrate that Marcos's injuries actually resulted from the bus driver's operation or use of the bus. Rather, the allegations demonstrate that Marcos's injuries were caused by Marcos's affirmative actions of opening the school bus emergency door and exiting the bus while it was in motion. Furthermore, even if the bus driver's failure to adequately supervise the students on the bus contributed to the accident, her actual operation and use of the bus did not cause the injuries. *See Goston,* 853 S.W.2d at 733.

The Montoyas' allegations are more comparable to the allegations made in *Hopkins,* 736 S.W.2d at 618 and *Estate of Garza,* 613 S.W.2d at 527. In *Hopkins,* a student with cerebral palsy suffered severe convulsions while riding on her school bus to her after-school day care center. *Hopkins,* 736 S.W.2d at 618. The bus driver contacted his supervisor and requested that a school nurse meet the bus. *Id.* Instead of providing the nurse, the supervisor instructed the driver to proceed with the student to the day care center, where she finally received medical care. *Id.* The student's family brought suit

---

**3.** While not specifically identified on appeal, the allegations in the Montoyas' amended petition that HISD failed to equip the school bus with an adequate restraining device and that HISD failed to instruct the bus driver on the proper use of the restraining device are unrelated to the operation or use of a motor-driven vehicle. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1)(A) (Vernon 1997). Additionally, these allegations also concern discretionary decision-making, and thus do not support a waiver of immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 1997); *Cortez v. Weatherford Indep. Sch. Dist.,* 925 S.W.2d 144, 150 (Tex.App.-Fort Worth 1996, no writ).

against the school district, alleging that the district's failure to provide adequate medical care caused the student's personal injuries. *Id.* The court refused to find a waiver of the school district's immunity, noting that the student's injuries "could not have arisen from the *use or operation of a motor vehicle* as contemplated by the statute." *Id.* (emphasis added).

In *Garza,* a non-student passenger boarded a school bus and stabbed a student who was riding the bus to school. *Garza,* 613 S.W.2d at 527. The plaintiffs alleged that the school district "failed to provide safe transportation for and effective control of the students riding on the school bus." *Id.* The *Garza* court held that "the injury arose out of the failure to control and supervise the public, and not from the operation or use of a motor vehicle. . . . [A] knife and not the use of the bus was the cause of plaintiff's damage."[4] *Id.* at 528; *see also Martinez v. VIA Metrop. Transit Auth.,* 38 S.W.3d 173, 176 (Tex.App.-San Antonio 2000, no pet.) (concluding that transit authority did not waive immunity to claims brought by metro van passenger after metro van driver failed to transport passenger timely and properly to nearest medical facility when he became sick and passed out).

As in *Hopkins* and *Garza,* here, the Montoyas' pleadings demonstrate that the bus driver's failure to supervise or control Marcos may have contributed to Marcos's injuries. However, the pleadings do not demonstrate that the *bus driver's operation or use of the bus* actually caused Marcos's injuries. Instead of demonstrating the required nexus between Marcos's injuries and the driver's operation or use of the bus, the Montoyas' pleadings establish only that Marcos's injuries were the result of Marcos's affirmative actions and possibly the bus driver's failure to supervise, control, or direct Marcos.

Because the Montoyas' allegations demonstrate that the HISD school bus merely provided the setting for Marcos's injuries and that the bus driver's operation or use of the bus did not proximately cause Marcos's injuries, we hold that the Montoyas' claims do not fall within the waiver of immunity set forth in section 101.021(1). *Hopkins,* 736 S.W.2d at 619. Accordingly, we further hold that the trial court did not err in granting HISD's plea to the jurisdiction.

We overrule issues one through four.

### Conclusion

We affirm the order of the trial court granting HISD's plea to the jurisdiction.

ALCALA, J., dissenting.

ELSA ALCALA, Justice, dissenting.

I respectfully dissent from the portion of the majority opinion in which it addresses the Montoyas' allegation that the bus driver was negligent by "failing to stop the bus before Marcos reached the emergency exit, opened it, and fell through it." I would construe this portion of the Montoyas' petition as alleging that their eight-year-old, mentally retarded child was injured because the bus driver negligently continued to drive the moving bus while

---

4. The *Hopkins* court stated "we are unwilling to believe that the legislature . . . intended to expose school districts to unlimited liability for stabbings on school buses while denying such claims for stabbings on school grounds." *Id.* at 528. Like the supreme court in *Hopkins,* we are unwilling to believe that the legislature intended to expose school districts to unlimited liability for injuries caused by the affirmative actions of students on school buses while at the same time denying such claims for injuries caused by the affirmative actions of students on school grounds.

the child opened the emergency exit door and fell through it.

The majority opinion holds that the child's conduct, which it terms his "affirmative act," caused the injuries he sustained and that, "at most, the driver's negligent use simply furnished the condition" that "enabled Marcos to exit the bus and injure himself." I would hold, instead, that the pleadings allege the necessary nexus between the bus driver's negligent conduct—continuing to drive the bus while a child opened the emergency exit door—and the injuries that the child sustained from his fall from the moving bus through the emergency door. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021(1)(A), 101.025(a) (Vernon 1997) (conditioning waiver of governmental immunity and resulting governmental liability for personal injury on injury's "*aris[ing] from* the *operation or use of a motor-driven vehicle* ") (emphasis added); *see also Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 543 (Tex.2003) (noting that supreme court has "consistently required a nexus between the operation and use of the motor-driven vehicle or equipment and a plaintiff's injuries").

The majority opinion suggests that, for the bus driver's actions here to rise to the level of nexus with the injuries to Marcos, the driver would have to have done something more than merely continue to drive. I disagree. If, for example, a child runs in front of a car, the driver should not continue to drive, even at the speed limit, but should stop to prevent injuring the child. In this example, if the car struck a child who had run in front of the car, the mere act of continuing to drive would constitute the necessary nexus with injuries to the child, even if the child was also at fault by running in front of the car. Similarly, if a child opens an emergency door on a bus, the mere act of continuing to drive under that condition furnishes the element of dangerousness to an activity that would otherwise not necessarily be dangerous if the bus were stationary. In other words, the child's conduct of opening the emergency door on the bus is ordinarily not dangerous if the bus is stationary; what created the danger here was the bus driver's moving the bus while the child opened the door.

The school bus here was more than simply the location of the injury. *See Le-Leaux v. Hamshire–Fannett Sch. Dist.,* 835 S.W.2d 49, 51 (Tex.1992) (noting that empty school bus was parked and that driver was not aboard as significant factors in upholding lower courts' rulings that school district had not waived immunity from suit). The distinction from *LeLeaux* that, in my view, the majority opinion does not consider, is that the pleadings here allege injuries that resulted from the combination of two acts, specifically, the child's dangerous act of opening an emergency door on a moving bus and the driver's dangerous act of continuing to drive the bus while this happened. In this case, therefore, and in contrast to the *LeLeaux* case, I would conclude that the pleadings allege that the bus was more than merely the location for the injury. *See id.; see also Whitley,* 104 S.W.3d at 543 (restating "mere location" rule). Rather, the pleadings allege that the movement of the bus as the child opened the emergency door caused the child's extensive injuries.

Moreover, although there must be a nexus between the injury and the operation or use alleged, *Whitley,* 104 S.W.3d at 543, the statute does not require that the use or operation of the motor vehicle constitute the sole cause of the injury. *See Id.* (noting that Whitley failed to show that use of bus "contributed to" Whitley's injuries); *see also Austin Indep. Sch. Dist. v. Gutierrez,* 54 S.W.3d 860, 866 (Tex.App.-Austin 2001, pet. denied) (noting that bus

driver's honking to indicate safety of crossing road "may have contributed" to accident that resulted in passing car's striking and killing child). Thus, although the child's conduct in opening the door may certainly have contributed to his injuries, the Montoyas' pleading that the bus driver continued to operate the bus under the circumstances also alleges that the driver contributed to the child's harm.

The majority opinion further suggests that the substance of the Montoyas' pleadings alleges only claims for negligent supervision, for which the Legislature has not waived HISD's immunity from suit, rather than claims for negligent operation or use of a motor vehicle, for which the Legislature has waived HISD's immunity from suit pursuant to sections 101.021(1)(A) and 101.025(a). Regardless of whether the child was negligently supervised, it was the movement of the bus by the bus driver that caused the serious injuries to the child from his fall through the emergency door of the moving bus.

I would hold that the Legislature has waived HISD's immunity from suit for the injuries to Marcos that his parents allege were caused by the driver's continuing to operate the bus while the child opened the emergency door and fell through it, and that the trial court therefore has jurisdiction to address this pleading only.