Opinion filed October 19, 2006

















 
 
  
 
 







 
 
  
 
 




Opinion filed October 19, 2006

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00343-CV 

                                                    __________

 

         BRECKENRIDGE INDEPENDENT
 SCHOOL DISTRICT, Appellant

 

                                                             V.

 

JANINE VALDEZ,
INDIVIDUALLY AND AS NEXT FRIEND OF DENNISE VALDEZ, A MINOR, Appellee

 



 

                                          On
Appeal from the 90th District Court

 

                                                       Stephens County,
Texas

 

                                                   Trial
Court Cause No. 28,879

 



 

                                                                   O
P I N I O N








Breckenridge
Independent School District (BISD) appeals from the trial court=s order denying its plea to the
jurisdiction raising governmental immunity in a suit brought by Janine Valdez,
individually and as next friend of her daughter, Dennise Valdez (Valdez).[1]  The issue on appeal is whether Valdez alleged facts
demonstrating a valid waiver of BISD=s governmental immunity under the Texas
Tort Claims Act.[2]  See Tex.
Civ. Prac. & Rem. Code Ann. ' 101.021 (Vernon 2005).  Because we hold that Valdez did not allege facts demonstrating a
valid waiver of governmental immunity, we reverse and render judgment
dismissing this cause for want of jurisdiction.

                                                               Background
Facts

Valdez brought this negligence action against
BISD based on the conduct of its bus driver Joyce Campbell.  Valdez
alleged the following background facts in her petition:

5. 
On the morning [of] May 20, 2004, four year old Dennise Valdez was
picked up by bus driver Joyce Campbell, to be taken to East Elementary, where
she was to attend a special needs class from 9:00 a.m. to 11:00 a.m. that
morning.  Dennise was and is severely
disabled, cannot verbally communicate, and is wheel chair bound.

 

6. 
Incredibly, the bus driver drove the bus directly to the bus barn,
bypassing the school altogether, and parked the bus, leaving Dennise alone
inside.  She remained trapped and
abandoned in the bus for approximately two hours, until the bus driver
returned.  Little Dennise was then driven
home, and at that time, Plaintiff Janine Valdez was not told that Dennise had
been left on the bus for two hours.  It
was not until Janine Valdez spoke to Dennise=s
teacher that day did she learn that Dennise had never been to school.  Only after learning this did the District
then acknowledge what happened.  Dennise
was then taken to Stephens
 Memorial Hospital,
where she was treated for heat prostration.

 

Valdez
alleged the following facts in support of her negligence claim against BISD:
(1) that Campbell was an employee of BISD; (2) that Campbell=s actions in driving the bus occurred in
furtherance of her employment; (3) that Campbell=s
actions B Ain apparently and incredibly forgetting to
take her one and only passenger to school@ and, instead, Adriving the bus directly to the bus barn
and parking it with Dennise Valdez inside@ B constituted negligence; (4) that Campbell=s negligence proximately caused damages to
the plaintiff; and (5) that, because Campbell=s
actions occurred in furtherance of her employment with BISD, the school
district was vicariously liable for the plaintiff=s
damages.  Valdez also alleged that Dennise Valdez=s injuries arose from the operation or use
of a motor vehicle and that, therefore, there had been a waiver of BISD=s governmental immunity under the Tort
Claims Act:                     








8. 
The bus driver=s wrongful and negligent conduct, in
driving the bus to the bus barn, and parking the same with little Dennise
inside, directly and proximately caused Dennise=s
injuries, as described below.  Dennise=s injuries, therefore, clearly arose out of
the operation or use of a motor vehicle, and as such, the District is subject
to liability under Tex. Civ. Prac. & Rem. Code section 101.021. 

      


BISD
filed a plea to the jurisdiction asserting that Dennise Valdez=s alleged injuries did not  arise from the operation or use of a
motor-driven vehicle as required for a waiver of governmental immunity under
the Tort Claims Act.  Rather, BISD argued
that the alleged injuries arose from Campbell=s negligent supervision in failing to
unload Dennise Valdez from the bus. 
Therefore,  BISD asserted that
there had been no waiver of its governmental immunity under the Tort Claims
Act.

The
trial court held a hearing on BISD=s plea to the jurisdiction.  Later, the trial court entered an order
denying the plea.  As permitted by Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(8) (Vernon Supp. 2006), BISD
filed this interlocutory appeal from the trial court=s order.

                                                     Issues
on Appeal

BISD
presents three issues for review.  BISD
argues that the trial court erred in denying its plea to the jurisdiction for
the following reasons: (1) the facts alleged by Valdez did not demonstrate that
Dennise Valdez=s injuries arose from the operation or use
of a motor vehicle; (2) there was no clear and unambiguous waiver of its
governmental immunity by the legislature; and (3) Valdez failed to exhaust
administrative remedies.    

                                                  Standard
of Review

Governmental
immunity from suit defeats a trial court=s subject matter jurisdiction.  Tex.
Dept. of Parks and Wildlife v. Miranda, 133 S.W.3d 217, 225-26 (Tex. 2004); Dallas
Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex.
2003); Ector County v. Breedlove, 168 S.W.3d 864, 865 (Tex. App.CEastland 2004, no pet.).  Therefore, governmental immunity is properly
asserted in a plea to the jurisdiction.  Miranda,
133 S.W.3d at 225-26; Tex. Dep=t of Transp. v. Jones, 8 S.W.3d 636, 637 (Tex. 1999). 
Whether a court has subject matter jurisdiction is a legal question that
we review de novo.  Miranda, 133
S.W.3d at 226; Breedlove, 168 S.W.3d at 865.  








The Tort
Claims Act provides a limited waiver of sovereign or governmental immunity,
allowing suits to be brought against governmental units only in certain,
narrowly defined circumstances.  Tex. Dep=t of Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex.
2001); Breedlove, 168 S.W.3d at 865. 
A plaintiff must affirmatively demonstrate the court=s jurisdiction by alleging a valid waiver
of immunity.  Whitley, 104 S.W.3d
at 542; Miller, 51 S.W.3d at 587. 
For the purposes of this appeal, BISD does not dispute the
jurisdictional facts alleged by Valdez,
and the parties did not offer any evidence at the hearing on BISD=s plea to the jurisdiction.  Therefore, we look solely to Valdez=s pleadings in determining the immunity
issue.  See Miranda, 133
S.W.3d at 226-27.  When a plea to the
jurisdiction challenges the pleadings, we consider de novo whether the pleader
has alleged facts that affirmatively demonstrate the trial court=s jurisdiction to hear the cause.  Id.
at 226.  We construe the pleadings
liberally in favor of the pleader and look 
to the pleader=s intent. 
Id.

                                       Governmental
Immunity and the Tort Claims Act

BISD, a
governmental unit, is immune from liability for Valdez=s alleged injuries unless that immunity has
been waived by the Tort Claims Act.  Tex. Civ. Prac. & Rem. Code Ann.'' 101.001(3)(B), 101.025, 101.051 (Vernon
2005); LeLeaux v. Hamshire-Fannett Ind. Sch. Dist., 835 S.W.2d 49, 51 (Tex. 1992). 
Valdez
asserts that her claims fall within the waiver of immunity provided for in
Section 101.021(1) of the Tort Claims Act. 
Section 101.021(1) provides that a governmental unit in this state is
liable for:

(1)
property damage, personal injury, and death proximately caused by the wrongful
act or omission or the negligence of an employee acting within his scope of
employment if:

 

(A) the
property damage, personal injury, or death arises from the operation or use of
a motor-driven vehicle or motor-driven equipment; and

 

(B) the
employee would be personally liable to the claimant according to Texas law.   

  








Thus,
pursuant to the limited waiver of liability set forth in Section 101.021(1), a
school district is not liable for injuries proximately caused by a negligent
employee, unless the injury Aarises from the operation or use of a
motor-driven vehicle.@ 
Because the legislature failed to define the terms Aoperation@
and Ause,@ the terms are construed according to their
ordinary meanings.  Mount
 Pleasant Ind. Sch. Dist. v.
Estate of Lindburg, 766 S.W.2d 208, 211 (Tex. 1989). 
AOperation@
means Aa doing or performing of a practical work,@ and Ause@ means Ato
put or bring into action or service; to apply for or apply to a given purpose.@  Whitley,
104 S.W.3d at 542; LeLeaux, 835 S.W.2d at 51.  The Aarises from@
language in Section 101.021(A)(1) requires a nexus between the injury and
the operation or use of the motor vehicle. 
LeLeaux, 835 S.W.2d at 51. 
This nexus requires more than mere involvement of the vehicle.  Whitley, 104 S.W.3d at 543.  Rather, the operation or use of the vehicle
or equipment must have actually caused the injury.  Id.  The operation or use of a vehicle does not
cause an injury if it does no more than furnish the condition that makes the
injury possible.  Id.

In LeLeaux, Monica LeLeaux and other school
band members traveled to a marching contest in school buses.  After marching in the contest, Monica
returned to a parked and empty school bus. 
The rear emergency door of the bus was open.  When Monica attempted to enter the emergency
door by jumping through it, she hit her head on the door frame and injured
herself.  LeLeaux, 835 S.W.2d at
50-51.  The supreme court held that
Monica=s
injuries did not arise from the operation or use of the bus:

The
bus in this case was not in operation; it was parked, empty, with the motor
off.  The driver was not aboard; there
were no students aboard.  The bus was not
Adoing or performing a practical work@; it was not being Aput or [brought] into action or service@; it was not being Aemploy[ed] or appl[ied] to a given
purpose.@  The bus was nothing more than the place where
Monica happened to injure herself.   

 

Id.
at 51.  In LeLeaux, Monica
contended that the school district had been negligent in the operation and use
of its school buses because of the school district=s
Apractice of regularly loading and
unloading the band students and their instruments through the emergency rear
doors of school buses.@  Id.
at 52.  The supreme court agreed with
Monica=s
contention that A[t]here
is no sound reason why the acts of loading and unloading students on and off
school buses should not be considered a part of the transportation process.@ 
Id.  However, the court held that Athe manner in which school district
employees loaded and unloaded students had nothing to do with Monica=s injury.@  Id.
               








To establish a school district=s waiver of immunity from suit, a
plaintiff need only allege that a motor vehicle was operated or used and
that there was a nexus between the injury and the operation or use of the motor
vehicle by a government employee.  Austin
Ind. Sch. Dist. v. Gutierrez, 54 S.W.3d 860, 863 (Tex. App.CAustin 2001, pet. denied) (emphasis in
original).  In this case, Valdez alleged
(1) that Campbell=s actions
of driving the bus to the bus barn, parking it, and leaving Dennise Valdez
inside the bus constituted a negligent operation or use of the school bus and
(2) that there was a nexus between Dennise Valdez=s
alleged injuries and Campbell=s
negligent operation or use of the school bus because leaving Dennise Valdez
inside the school bus caused her injuries. 
Therefore, Valdez
argues that her allegations demonstrate a valid waiver of BISD=s governmental immunity. Based on Valdez=s
allegations, BISD asserts that Dennise Valdez=s
injuries did not arise from the operation or use of the bus but, instead, arose
from Campbell=s negligent supervision in failing to
unload Dennise Valdez from the bus. 
Therefore, BISD argues that Valdez=s allegations did not demonstrate a
waiver of its governmental immunity.

Texas
courts have addressed the Aoperation@ or Ause@ of a motor vehicle requirement in
numerous cases involving school buses. 
In addressing the issue, the courts have considered whether the school
district employee=s acts
involved an actual operation or use of a school bus or whether the acts
involved the supervision or control of children.  See Elgin Ind. Sch. Dist. v. R.N.,
191 S.W.3d 263, 271-72 (Tex. App.CAustin
2006, no pet.); Montoya v. Houston Ind. Sch. Dist., 177 S.W.3d 332, 336-38 (Tex. App. C Houston [1st Dist.] 2005, no pet.); Gutierrez,
54 S.W.3d at 863-64); Goston v. Hutchison, 853 S.W.2d 729, 732-34 (Tex.
App. B Houston [1st Dist.] 1993, no writ); Estate
of Garza v. McAllen Ind. Sch. Dist., 613 S.W.2d 526, 527-28 (Tex. Civ. App.CBeaumont 1981, writ ref=d n.r.e.). 
When a plaintiff=s injuries arise from an employee=s Aaffirmative action@ actually using or operating the bus, the
school district=s immunity has been waived.  R.N., 191 S.W.3d at 272; Gutierrez,  54 S.W.3d at 866-67.  However, when the injuries arise from an
employee=s acts or omissions involving only
supervision or control of children, immunity has not been waived even if the
acts took place on or near the bus.  Montoya,
177 S.W.3d at 337-38; Goston, 853 S.W.2d at 733-34; Estate of Garza,
613 S.W.2d at 528.

The
courts have explained the Aaffirmative action@ requirement for a waiver of immunity. See
R.N., 191 S.W.3d at 269-72.  In Gutierrez,
a school bus driver taking children home from school discharged an
eight-year-old student across the street from her home.  The driver honked the horn to let the student
know that it was safe to cross the street. 
Gutierrez, 54 S.W.3d at 861. 
However, when the student attempted to cross the street, she was struck
and killed by a passing car.  The Austin court held that
the bus driver=s Aaffirmative action of honking the horn,@ which may have contributed to the
accident, constituted an Aoperation@
or Ause@ of the vehicle.  Id.
at 866-67.  








In Hitchcock
v. Garvin, 738 S.W.2d 34, 36 (Tex. App.CDallas
1987, no writ), a bus driver allegedly failed to turn on his flashing lights
prior to unloading a student from the bus. 
Immediately after getting off of the bus, the student attempted to cross
the street and was struck by a car.  The Dallas court held that a
bus driver=s failure to activate his flashers or
warning signals when students are exiting the bus constitutes an Aact or omission arising from the operation
or use of a motor-driven vehicle@ under the Tort Claims Act.  Hitchcock, 738 S.W.2d at 37.  

The bus
driver=s honking of the horn in Gutierrez
was comparable to the bus driver=s failure to activate the flashing lights
in Hitchcock.  In R.N., the
Austin court
explained Gutierrez and Hitchcock as follows:

In both cases, because the bus was present
at the time of the accident and because the bus driver engaged in some action
involving the bus itself that contributed to the accident, the courts found
that there was Ause@ of a motor-driven vehicle.       

              

R.N., 191 S.W.3d at 270.

In Dallas
Area Rapid Transit v. Willis, 163 S.W.3d 814 (Tex. App.CDallas 2005, pet. denied), a city bus
passenger fell when she attempted to exit the bus.  She asserted that the city bus driver had
been negligent in stopping the bus in a manner leaving a Along step@
to the curb.  Willis, 163 S.W.3d
at 817.  The Dallas court explained that the use or
operation of a motor vehicle includes the act of stopping the vehicle.  The court held that the bus driver=s Aaffirmative action of parking the bus in a
way that may have contributed to the [passenger=s]
accident@ constituted the required Aoperation@
or Ause@ of a motor vehicle under the Tort Claims
Act.  Id.

On the
other hand, when the school district employee=s
acts or omissions relate to the direction, control, and supervision of
students, there is no waiver of immunity. 
In Goston, a school bus driver allowed two students to exit the
bus at a non-designated stop at their request. 
Goston, 853 S.W.2d at 731. 
The students got into a vehicle being driven by a friend and were
involved in a collision.  One of the
students was killed, and the other student was seriously injured.  Id.  The Houston First court concluded that
leaving a student at the wrong bus stop was a failure to properly supervise the
student, not a negligent use or misuse of equipment on the school bus.  Therefore, the court held that immunity
barred the plaintiffs= claims. 
Id.
at 734.








In Montoya,
an eight-year-old student received injuries when he fell from the emergency
exit of a moving school bus.  Montoya,
177 S.W.3d at 334.  Before the accident,
the student had a history of aggressive behavior on the school bus including
getting out of his seat, running around on the bus, and attempting to get out
of the bus through the emergency exit. 
The school district equipped the student=s
seat with a child-proof harness to restrain him.  On the day of the accident, the student got
out of his harness, opened the emergency exit, and fell from the bus.  Id.
at 334-35.  The student=s parents made three specific Aoperation@
or Ause@ allegations against the school district:
(1) that the bus driver had been negligent in failing to timely stop the bus
before the student opened the emergency door and fell from the bus; (2) that
the bus driver had been negligent in failing to maintain a reasonable lookout
while driving the bus; and (3) that the bus driver had been negligent in
failing to properly use the child-proof harness to restrain the student.  Id.
at 336-37. 

In
analyzing the allegations in Montoya, the court stated that Ait is generally true that a driver=s negligent failure to timely stop a
vehicle . . . would relate to the operation of that vehicle.@  Id. at 337.  However, the court concluded that the failure
to stop allegations related to Athe bus driver=s failure to stop the bus to prevent [the
student] from opening the rear door and falling out of the bus.@  The
court explained that these allegations Aactually relate[d] to the bus driver=s duty to supervise and respond to [t]he
student=s behavior on the bus, not the driver=s operation or use of the bus itself.@  Id.  Similarly, the Montoya court
concluded that the allegation of failing to maintain a reasonable lookout also
related to the supervision of the students and did not constitute an actual
operation or use of the bus.  Id.  Finally, the court concluded that the
allegation of failing to properly use the child-proof harness did not relate to
an operation or use of the bus.  Id. at
337-38.  Therefore, the court held that
the school district=s immunity had not been waived.  Id.
at 339.








Whitley involved a municipal bus.  In Whitley, two bus passengers, Harold
Whitley and Mary Burkley, got into an altercation.  The bus driver stopped the bus and told
Whitley to exit.  The bus driver also
told Whitley that he would come back for him in a few minutes.  Burkley exited the bus about two blocks
later, recruited her son and his friends to join her against Whitley, and then
went back to the place where the bus driver had left Whitley.  The group then beat Whitley severely.  Whitley, 104 S.W.3d at 541-42.  Whitley argued that his injuries arose from
the use of the bus because the bus driver wrongfully ejected him from the bus
in a dangerous area, allowed the other passenger to exit the bus, and failed to
return to pick him up.  Id. at 542.  The supreme court held that Whitley=s injuries did not arise from a use of the
bus but, rather, Aarose from the bus driver=s failure to supervise the public, which is
insufficient to waive immunity under the Tort Claims Act.@  Id. at 542-43.

In Ransom
v. Center for Health Care Servs., 2 S.W.3d 643 (Tex. App.CSan Antonio 1999,  pet. denied), a county agreed to provide transportation
to Ransom who was mentally retarded.  The
driver of a county vehicle dropped Ransom off across the street from his home
instead of at his home.  When Ransom
attempted to cross the street, he was hit by a vehicle being driven by an
intoxicated driver.  Id. at 644.  The San
 Antonio court followed the rationale in Goston
and concluded that leaving Ransom across the street from his home was
supervisory in nature, as opposed to an operation or use of the vehicle.  Therefore, the court held that immunity
barred Ransom=s suit. 
Id.
at 645.

R.N. involved facts similar to the facts in
this case.  In R.N., a school bus
driver, accompanied by a bus monitor, picked up five-year-old R.N. to take her
to her pre-kindergarten class.  After
arriving at the school, the bus driver and bus monitor got off of the bus, but
they left R.N. on the bus instead of making sure that she was off of the
bus.  R.N. had fallen asleep during the
trip to school, and she was unaware that the bus had arrived at the
school.  When R.N. woke up, she tried to
get out of the bus but was locked inside of the bus where she remained from
late-morning until mid-afternoon.  In R.N.,
the plaintiff asserted a negligence action against the school district
based on the actions of the bus driver and the bus monitor.  The plaintiff alleged that the bus driver and
bus monitor Afailed and refused to look in their bus to
assure that [R.N.] was off  the bus and
in school,@ that the bus driver and bus monitor locked
R.N. inside the bus from late-morning until mid-afternoon, and that R.N.
received injuries resulting from being locked inside the bus.  R.N., 191 S.W.3d at 265-66.

In
R.N., the plaintiff argued that R.N.=s injuries arose from the Aoperation@
or Ause@ of the bus.  The Austin
court described the plaintiff=s argument as follows:

(1) transporting R.N. and other students
constitutes use or operation of the bus; (2) stopping and unloading the bus is
part of this transportation process; and (3) because R.N. was never unloaded at
school, the Ause@ or Aoperation@
of the bus to transport her never ceased that day; therefore (4) R.N.=s injuries arose from such use or
operation.   

 

R.N., 191 S.W.3d at 268.  








Valdez makes a similar argument in this
case.  She asserts that Aoperation@
or Ause@ of a bus includes matters of
transportation and that Dennise Valdez=s injuries arose from the bus driver=s Aoperation@
or Ause@ of the bus in driving her to the bus barn
and leaving her on the bus.

In R.N.,
the court discerned the following principles from a thorough and well-reasoned
analysis of relevant case law.  First,
for immunity to be waived under Section 101.021, Aa
plaintiff[=s] injuries must actually have been caused
by the use or operation of a motor vehicle.@  Id.
at 271.  Second, Ainjuries arising from supervision of bus
passengers do not arise from the operation or use of a vehicle.@  Id. at 272.  Third, Aa bus driver=s
decisions and actions regarding whether and when passengers disembark the bus,
and their safety in doing so, are considered supervisory in nature.@  Id.  Fourth, A[o]nly where the injuries arise from some >affirmative action= actually using or operating the bus is
immunity waived.@  Id.

The R.N.
court then applied the principles to the plaintiff=s allegations.  The court first addressed the plaintiff=s allegation that the bus driver and the
bus monitor failed or refused Ato look in their bus to assure that [R.N.]
was off the bus and in school.@  Id.  The plaintiff argued that this allegation
constituted Aan aspect of the use of the bus to
transport R.N. to school.@  Id.  However, the court explained that the failure
to unload R.N. from the bus involved a failure to supervise her.  Therefore, the court concluded that the
allegations referred Aonly to injuries arising from a failure to
supervise, not from a use or operation of the bus itself.@  Id.  Because the injuries were attributable to the
school district=s negligent supervision, the allegations
did not establish a waiver of immunity under Section 101.121.  Id.  

Next,
the R.N. court addressed the plaintiff=s
allegation that the bus driver and the bus monitor locked the bus door.  Broadly construing the plaintiff=s pleadings, the court determined that the
plaintiff sufficiently alleged that R.N. was injured by a negligent locking of
the bus door.  The  court explained that the locking of the door
was akin to the honking of the horn in Gutierrez.  Therefore, the court held that the
affirmative action of locking the door constituted a use of the bus.  Because the plaintiff alleged injuries
arising from the use of a bus, the court held that the plaintiff alleged a
valid waiver of immunity.  Id.








In this
case, Valdez argues that Campbell=s actions in driving the bus to the bus
barn and parking it there with Dennise Valdez inside the bus constituted an Aoperation@
or Ause@ of the bus and had nothing to do with
supervision of a child.  Campbell drove the bus to the bus barn
because she forgot that Dennise Valdez was on the bus.  Forgetting that Dennise Valdez was on the bus
and failing to unload her from the bus involved the failure to supervise
Dennise Valdez.  See R.N., 191
S.W.3d at 272.  Similar to LeLeaux,
Dennise Valdez=s injuries had nothing to do with  Athe manner in which school district
employees loaded and unloaded students.@  LeLeaux,
835 S.W.2d at 52.  Rather, Dennise
Valdez was injured because Campbell
forgot to unload her from the bus.  As
such, her injuries arose from a failure of supervision, not from a use or
operation of the bus itself.  Because
Dennise Valdez=s injuries are attributable to BISD=s negligent supervision, as opposed to an Aoperation@
or Ause@ of the school bus, Valdez=s allegations do not demonstrate a valid
waiver of governmental immunity.

Valdez did
not allege an Aaffirmative action@ on the part of Campbell constituting a use of the bus, such
as the locking of the door in R.N. or the honking of the horn in Gutierrez.  In the absence of such an allegation, Valdez=s allegations are indistinguishable Afrom those stating merely injuries caused
by negligent supervision.@  See R.N., 191 S.W.3d at 272.  Dennise Valdez=s
physical condition and being confined in a wheelchair would have prevented her
from exiting the bus, whether or not Campbell
locked the door.  However, Dennise Valdez=s inability to exit a bus cannot satisfy
the requirement of an Aaffirmative action@ on the part of BISD for a waiver of
immunity under the Tort Claims Act.

Valdez did not allege facts demonstrating a valid
waiver of BISD=s governmental immunity.  The trial court erred in denying BISD=s plea to the jurisdiction.  Therefore, we sustain BISD=s first issue. Because we have sustained
BISD=s first issue, we need not address BISD=s second and third issues.  Tex.
R. App. P. 47.1.

                                                               This
Court=s Ruling

We
reverse the trial court=s order denying BISD=s plea to the jurisdiction and render
judgment dismissing this cause with prejudice.            

 

TERRY McCALL

JUSTICE

October 19, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











[1]BISD asserted that there had been no waiver of
sovereign immunity in its first amended plea to the jurisdiction.  Sovereign immunity refers to the state=s immunity from suit and liability.  Wichita Falls State Hosp. v. Taylor,
106 S.W.3d 692, 694 n.3 (Tex.
2003).  It protects the state and various
divisions of state government from liability. 
Id.  Governmental immunity, on the other hand,
protects political subdivisions of the state, including counties, cities, and
school districts.  Id. 





[2]Tex. Civ. Prac. & Rem.
Code Ann. '' 101.001B.109 (Vernon 2005 & Supp. 2006).