# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00174-CV

**Elgin Independent School District,
Emilia Lopez and Dora Morua, Appellants**

**v.**

**R. N., a Minor Child By Victoria Newman,
Individually and As Representative, Appellees**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT
### NO. 25,017, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## O P I N I O N

Elgin Independent School District (Elgin I.S.D.) appeals from the district court's denial of its plea to the jurisdiction raising sovereign immunity against a suit brought by Victoria Newman, individually and on behalf of her daughter, R. N. (collectively, "Newman"). The appeal presents the narrow question of whether Newman pleaded facts constituting a valid waiver of Elgin I.S.D.'s sovereign immunity under the tort claims act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2005). Applying our standard of review governing such issues, we affirm the district court's denial of the plea.

## BACKGROUND

Consistent with our standard of review, discussed below, we take as true the following facts from Newman's pleadings. In the late morning of November 1, 2003, five-year-old R. N. was picked up by an Elgin I.S.D. school bus to go to her half-day pre-kindergarten class. Emilia Lopez was the driver and Dora Morua was the bus monitor. Newman alleged the following acts by Lopez and Morua thereafter:

> Defendants Lopez and Morna [sic] had actual knowledge and knew Plaintiff Newman [the child] was seated on their bus and drove the minor child to school. Defendants arrived at school, exited the bus parked on the school campus and failed and refused to look in their bus to assure that Plaintiff Newman was off the bus and in school. Plaintiff Newman, a child of five years of age, fell asleep during the drive to school and was unaware the bus had arrived. Defendants locked Plaintiff inside the bus until approximately 3 PM without adequate ventilation, water and supervision. Plaintiff Newman awoke and tried to exit the bus but found herself locked inside the bus. Plaintiff Newman cried, screamed and tried to get the attention of Defendant's employees but her calls were ignored. Plaintiff was confined inside the hot uncomfortable vehicle through out [sic] the majority of the day. Plaintiff was frightened and physically and emotionally injured because of Defendants' negligence.

Newman made these allegations against Lopez and Morua the basis for a negligence claim against Elgin I.S.D., pleading that "[t]he negligent, careless and reckless disregard of duty of Defendant Elgin Independent School District consisted of leaving Plaintiff locke[d] inside their bus," as well as negligence claims against Lopez and Morua ("The negligent, careless and reckless disregard of duty of Defendants consisted of, but is not limited to . . . failed to keep a proper lookout for Plaintiffs' safety . . . and [f]ailure to monitor the presence of Plaintiff, a minor child, in the bus.").

Newman pleaded that "Plaintiffs have suffered physical and emotional trauma and damages" from R. N.'s being left on the bus, including R. N.'s past and future medical care, pain and

suffering, physical impairment, mental anguish, "[f]ear of future disease or condition," and "[c]ost of medical monitoring and prevention in the future." Newman also sought her own past and future medical expenses, mental anguish, "[f]ear of future disease or condition," and "[c]ost of medical monitoring and prevention in the future."

Elgin I.S.D. filed a plea to the jurisdiction based on sovereign immunity, asserting that Newman had failed to demonstrate a valid waiver of immunity under the tort claims act. *See id*. The district court denied its plea to the jurisdiction on February 25, 2005. From this order, Elgin I.S.D. took this interlocutory appeal.[1] *Id*. § 51.014(8) (West Supp. 2005).

## DISCUSSION

Elgin I.S.D. presents two issues on appeal, together arguing that the district court erred in denying its plea to the jurisdiction because Newman fails to plead a valid waiver of sovereign immunity.

**Standard of review**

Sovereign immunity deprives a trial court of subject-matter jurisdiction in suits against the State or certain governmental units, including school districts, unless the governmental

---

[1] The individual defendants Lopez and Morua also appear as parties to this appeal. However, the sole order in the appellate record is the district court's denial of Elgin I.S.D.'s plea to the jurisdiction based on sovereign immunity. Although the individual defendants had sought dismissal on other grounds, no order relating to these grounds is before us. Furthermore, the issue raised on appeal concerns only sovereign immunity. In the context of this record and our limited jurisdiction over interlocutory appeals, *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(4), (8) (West Supp. 2005), there are no issues properly before us that the individual defendants would have standing to raise. Thus, to the extent Lopez and Morua are appealing, we dismiss for want of jurisdiction.

3

unit consents to suit. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.051 (West 2005). Because sovereign immunity, if not waived, defeats a trial court's jurisdiction, it is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225-26; *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999). Subject-matter jurisdiction presents a question of law; we review *de novo* the district court's grant or denial of a plea to the jurisdiction. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin, 2000, no pet.).

Key to our disposition is the procedural posture of Elgin I.S.D.'s jurisdictional challenge. Elgin I.S.D. did not dispute the underlying jurisdictional facts Newman alleged, and no record was brought forward indicating that the district court heard evidence regarding jurisdictional facts. *See Miranda*, 133 S.W.3d at 225-26. Rather, Elgin I.S.D.'s plea to the jurisdiction challenged only Newman's *pleadings* for failing to affirmatively demonstrate the district court's jurisdiction. We consider *de novo* whether Newman met her burden of alleging facts affirmatively demonstrating the district court's jurisdiction over the cause, *id*. at 226, which here requires allegations demonstrating a valid waiver of Elgin I.S.D.'s immunity. *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Texas Dep't. of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). To determine whether Newman met that burden, we "construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Miranda*, 133 S.W.3d at 226. And, because Elgin I.S.D. does not challenge them, we accept as true the pleadings' factual allegations. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).

4

**Do Newman's pleadings state a valid waiver of sovereign immunity?**

Newman contends that her pleadings demonstrate a valid waiver of sovereign immunity under the following provision of the tort claims act:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

    (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

    (B) the employee would be personally liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021; *see also id*. § 101.051 (exempting school districts from tort claims act waivers of immunity "[e]xcept as to motor vehicles"). Elgin I.S.D. does not dispute that Newman adequately pleaded that Lopez and Morua were acting within the scope of their employment with the district and that their actions proximately caused R. N. and Newman damages. It does dispute whether Newman has sufficiently alleged that such personal injury "arises from the operation or use of a motor-driven vehicle."

When construing statutory immunity waivers under the tort claims act, the supreme court has emphasized that the act "provides a limited waiver of sovereign immunity, allowing suits to be brought against governmental units only in certain, narrowly defined circumstances." *Texas Dep't of Crim. Justice v. Miller*, 51 S.W.3d at 587; *see also Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341-42 (Tex. 1998) (surveying legislative history of act to

5

illustrate that "the waiver of immunity in the Tort Claims Act is not, and was not intended to be, complete"). We defer to the legislature's intent, as the policy "decision as to who should bear responsibility for governmental employees' misconduct should be made by the people's representatives" rather than courts. *Bossley*, 968 S.W.2d at 341.

To determine whether Newman's allegations state a valid waiver of immunity, we consider whether Newman alleges injuries proximately caused by Elgin I.S.D.'s negligence that have a nexus to the "use" or "operation" of the school bus. *See Whitley*, 104 S.W.3d at 543; *LeLeaux v. Hampshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992); *Austin Indep. Sch. Dist. v. Gutierrez*, 54 SW.3d 860, 863-64 (Tex. App.—Austin 2001, pet. denied); Michael Shaunessy and Sarah Wells, *Sovereign Immunity: "Bring Lawyers, Guns and Money"* State Bar of Texas, Suing & Defending Governmental Entities (July 28-29, 2005).

### Use or operation

The supreme court has construed "use" under section 101.021 as "to put or bring into action or service; to employ for or apply to a given purpose." *Whitley*, 104 S.W.3d at 542; *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989) (quoting *Beggs v. Texas Dep't of Mental Health & Mental Retardation*, 496 S.W.2d 252, 254 (Tex. Civ. App.—San Antonio 1973, writ ref'd)). "Operation" under the provision is "a doing or performing of practical work." *Mount Pleasant*, 766 S.W.2d at 211 (citing *Jackson v. City of Corpus Christi*, 484 S.W.2d 806, 809 (Tex. Civ. App.—Corpus Christi 1972, writ ref'd n.r.e.)). The use or operation must be by a governmental employee, not a third person. *LeLeaux*, 835 S.W.2d at 51.

Throughout her briefing, Newman identifies the relevant "use" or "operation" of the bus as the utilization of it to transport R. N. to school, arguing that (1) transporting R. N. and other students constitutes use or operation of the bus; (2) stopping and unloading the bus is part of this transportation process; and (3) because R. N. was never unloaded at school, the "use" or "operation" of the bus to transport her never ceased that day; therefore (4) R. N.'s injuries arose from such use or operation. The concept that unloading a bus is part of the transportation process finds some support in language from *LeLeaux*. In *LeLeaux*, a band student had entered an empty, parked school bus with a friend through a rear emergency door that an unknown person had left open. 835 S.W.3d at 50. She later exited the bus through the rear door. *Id*. The student picked up her pillow, which had fallen to the ground when she jumped down, and threw it back into the bus. *Id*. She then jumped back into the rear doorway, stood up while mistakenly thinking she was inside the door, and hit her head on the top of the door frame. *Id*. at 50-51. The supreme court held that the student's injuries did not arise from the use of the bus:

> The bus in this case was not in operation; it was parked, empty, with the motor off. The driver was not aboard; there were no students aboard. The bus was not "doing or performing a practical work"; it was not being "put or [brought] into action or service"; it was not being "employ[ed] or applied to a given purpose." The bus was nothing more than the place where [the plaintiff] happened to injure herself.

*Id*. at 51. The supreme court "agree[d] with [the student's] contention that 'there is no sound reason why *the acts of loading and unloading students on and off school buses should not be considered part of the transportation process*,'" but held that "the manner in which school district employees loaded and unloaded students had nothing to do with [the] injuries." *Id*. at 52 (emphasis added); *see*

7

*also Finnigan v. Blanco County*, 670 S.W.2d 313, 316 (Tex. App.—Austin 1984, no writ) (in context of negligence suit arising from sheriff's deputy leaving patrol car open and running near prisoners, observing that "[t]he use and operation of a motor-driven vehicle . . . involves the transportation of a person from one place to another, and such transportation includes the act of *stopping* the vehicle when one has reached one's destination").

Moreover, although Newman does not emphasize it, another "use" allegation is apparent from our *de novo* review of her pleadings. Construing them broadly, as we must, *see Miranda*, 133 S.W.3d at 227, Newman's pleadings allege that Elgin I.S.D. negligently locked the bus door, causing R. N. to be trapped inside the bus when she otherwise could have escaped, causing injury. *Cf. Bossley*, 968 S.W.2d at 343 (accepting that county mental health facility's unlocking of outer door was "use" of tangible property under section 101.021(2), but holding that such use did not cause escaped patient's suicide).

### *Do Newman's injuries arise from such use?*

The heart of the issue with regard to whether immunity has been waived here, as in *LeLeaux*, is whether R. N.'s and Newman's alleged injuries arose from one of the uses of the bus identified above. The mere involvement or proximity of a school bus to injury does not mean the injury arises from the use or operation of the bus. *LeLeaux*, 835 S.W.2d at 52; *see also* Michael Shaunessy, *Sovereign Immunity & the Extent of the Waiver of Immunity Created by the Texas Tort Claims Act*, 53 Baylor L. Rev. 87, 130-32 (2001) (compiling cases). "When an injury occurs on a school bus but does not arise out of the use or operation of the bus, and the bus is only the setting for the injury, immunity for liability is not waived." *LeLeaux*, 835 S.W.2d at 52.

In numerous cases, Texas courts have addressed the circumstances under which injuries related to the transport or unloading of students from a school bus are considered to arise from the use of the bus and waive immunity. Frequently, courts attribute the injuries to the "supervision" of students as opposed to the use or operation of the bus itself. *See*, *e.g.*, *Goston v. Hutchison*, 853 S.W.2d 729, 733 (Tex. App.—Houston [1st Dist.] 1993, no writ) ("when the allegations of negligence are related to the direction, control and supervision of the students, the suit is barred; when the allegations of negligence are related to the negligent use of the motor-driven vehicle itself, the suit is not barred").

In *Gutierrez*, for example, a school bus driver delivering children home after school stopped across the street from eight-year-old Adriana Gutierrez's home, and Adriana and her cousin, Raul, disembarked. 54 S.W.3d at 861. The bus driver honked the bus's horn to signal to the children that it was safe to cross the street. *Id*. As the students crossed the street, Raul went across safely, but Adriana was hit and killed by a drunk driver. *Id*.

To determine whether the plaintiffs had alleged a claim arising from the use or operation of the school bus, we first distinguished "school bus" cases where the injury occurred on the bus itself or before the bus arrived on the scene. *Id*.; *see LeLeaux*, 835 S.W.2d at 50-51; *Luna v. Harlingen Consol. Indep. Sch. Dist.*, 821 S.W.2d 442, 443 (Tex. App.—Corpus Christi 1991, writ denied) (children hit by third party's vehicle while awaiting arrival of school bus at allegedly poorly planned location); *Heyer v. North E. Indep. Sch. Dist.*, 730 S.W.2d 130, 130-31 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.) (driver lost control of private vehicle and hit students waiting at bus stop on school grounds); *Estate of Garza v. McAllen Indep. Sch. Dist.*, 613 S.W.2d 526, 527 (Tex.

9

Civ. App.—Beaumont 1981, writ ref'd n.r.e.) (student was stabbed to death by third party while riding school bus). We then examined several cases where students were injured after disembarking from a school bus. *Gutierrez*, 54 S.W.3d at 864-66.

As we acknowledged, several of our sister courts have deemed "supervisory" the actions of bus drivers in allowing passengers to disembark under various circumstances contributing to injury. *Id*. at 863-64; *see Goston*, 853 S.W.2d at 733 (students allowed to disembark at undesignated stop at their request, later caught ride with friend, and were in accident; injuries arose from supervisory actions rather than use of bus); *see also Ransom v. Center for Health Care Serv.*, 2 S.W.3d 643, 645 (Tex. App.—San Antonio 1999, pet. denied) (plaintiff was adult man with mental capacity of four-year-old; bus driver left him at bus stop across from group home and departed before man crossed street; man's injuries when hit by drunk driver arose from supervisory actions rather than use of bus).[2] We distinguished these cases, however, by pointing to the *Gutierrez* bus driver's "affirmative action" of honking the bus horn. *Gutierrez*, 54 S.W.3d at 866. We analogized the facts in *Gutierrez* to those of *Hitchcock v. Garvin*, 738 S.W.2d 34, 36 (Tex. App.—Dallas 1987, no writ), where the bus driver allegedly failed to take action that could have helped the student cross the street safely by not turning on his flashing lights. *Gutierrez*, 54 S.W.3d at 866. In both cases, because the

---

[2] We also discussed *Contreras v. Lufkin Independent School District*, 810 S.W.2d 23, 26 (Tex. App.—Beaumont 1991, writ denied), which we characterized as holding that a bus driver's error in delivering a six-year-old to the wrong stop, leading to her getting hit by a car, arose from the operation and use of the bus. *See Austin Indep. Sch. Dist. v. Gutierrez*, 54 S.W.3d 860, 865 (Tex. App.—Austin 2001, pet. denied). The supreme court subsequently disagreed with that characterization, concluding that *Contreras* did not reach whether immunity was waived. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003); *see also Tarkington Indep. Sch. Dist. v. Aiken*, 67 S.W.3d 319, 325 (Tex. App.—Beaumont 2002, no pet.).

10

bus was present at the time of the accident and because the bus driver engaged in some action involving the bus itself that contributed to the accident, the courts found that there was "use" of a motor-driven vehicle. *Id*.

Subsequent to *Gutierrez*, the supreme court held that a bus passenger's injuries did not arise from the use or operation of a Dallas Area Rapid Transit bus where an altercation arose between the plaintiff and another passenger, the bus driver ordered both passengers off the bus within two blocks of each other, and the plaintiff was severely beaten by the other passenger and her cohorts. *Whitley*, 104 S.W.3d at 542-43. Reversing the Dallas court of appeals, the supreme court held that the plaintiff's injuries "arose from the bus driver's failure to supervise the public, which is insufficient to waive immunity under the Tort Claims Act." *Id*. The court distinguished *Gutierrez* on the basis that no use of the bus similar to honking the horn contributed to Whitley's injuries. *Id*. at 543.

Still more recently, the Dallas court of appeals has held that a plaintiff sufficiently alleged a valid waiver where she alleged that the driver negligently stopped the bus in a manner that left a "long step" and caused her to fall when disembarking. *See Dallas Area Rapid Transit v. Willis*, 163 S.W.3d 814, 817 (Tex. App.—Dallas 2005, pet. filed). Noting our *Finnigan* opinion, the court stated that the "use" or "operation" of a motor-driven vehicle necessarily included the act of stopping. *Id*. The court then found the requisite "affirmative action" in the driver's "parking the bus in a way that may have contributed to the accident." *Id*.

On the other hand, the First District Court of Appeals found no waiver where an eight-year-old special education student fell through an emergency exit. *See Montoya v. Houston*

11

*Indep. Sch. Dist.*, 177 S.W.3d 332, 336-39 (Tex. App.—Houston [1st Dist.] March 31, 2005, no pet.). Before the accident, the student had a history of aggressive behavior on the school bus, and, consequently, the school district equipped his seat with a special child-proof harness to restrain him. *Id*. at 334-35. On the day of the accident, the passenger freed himself from the harness and, while the bus was in motion, opened and fell out of the emergency exit. *Id*. at 335. The student's parents filed suit alleging failure to maintain a reasonable lookout and notice that he had disengaged the harness, failure to stop the bus before the student reached the emergency exit, and failure to use a child-proof harness to restrain the student. *Id*. The court found that the first two allegations related to the bus driver's failure to supervise and respond to the student's behavior, not the use or operation of the bus. *Id*. at 337. As for the third, the court held that the failure to use a proper harness was not the cause of the student's injuries; rather, they were caused by the student's act of opening and exiting the rear door of the bus. *Id*. at 337-38.

While not employing the supervisory/use dichotomy, the Tyler court of appeals held that injuries suffered by a mentally impaired man while being loaded onto a bus or van did not arise from the use or operation of the motor vehicle. *Starkey v. Andrews Ctr.*, 104 S.W.3d 626, 628-29 (Tex. App.—Tyler 2003, no pet.). It rejected the plaintiff's attempt to invoke *LeLeaux* for the proposition that loading and unloading passengers is "part of the transportation process," *see LeLeaux*, 835 S.W.2d at 52, characterizing that language as *dicta*. *Starkey*, 104 S.W.3d at 629. Instead, the Tyler court construed *LeLeaux* and the supreme court's subsequent decisions as holding that "for property to be used in causing injury, it must actually be involved and not merely serve as the situs of injury or furnish the condition that made the injury possible." *Id*. (citing *Miller*, 51

S.W.3d at 590, and *Bossley*, 968 S.W.2d at 343). It concluded that "*LeLeaux* establishes that a vehicle not in use or operation and which is only the site for the injury does not create a waiver of immunity." *Id*.

Finally, in a 2003 memorandum opinion, we applied the *Gutierrez* "affirmative action" concept in a case involving a student who was hit by a car after being dropped off by a school bus. *King v. Manor Indep. Sch. Dist.*, No. 03-02-00473-CV, 2003 Tex. App. LEXIS 6346, at *12 (Tex. App.—Austin July 24, 2003, no pet.). After disembarking, the student would routinely walk with her friends on the same side of the road as the bus stop before crossing the road. *Id*. at *1. On the day in question, the students appeared to be following this pattern, so the bus driver departed from the stop. *Id*. The students then walked for only one-half block on the same side of the road before attempting to cross the street. *Id*. at *1-2. At the crossing, one of the students was struck by a passenger car. *Id*. at *1. In the suit that followed, it was alleged that the bus driver was negligent in failing to remain at the bus stop long enough to ensure the student's safety. *Id*. at *6. In distinguishing the case from *Gutierrez*, we held that there was no affirmative action on the part of the driver. *Id*. at *7-8. After surveying many of the cases we have reviewed here, we concluded that "[t]he bus driver's judgment about the amount of time necessary to remain at the bus stop and judgment about what actions the children were going to take is a matter of the driver's supervision of the children rather than the operation or use of a motor vehicle." *Id*. at *12.

From these cases, we can discern the following general principles. First, for sovereign immunity to be waived under section 101.021 of the tort claims act, a plaintiffs' injuries must actually have been *caused by* the use or operation of a motor vehicle—"the operation or use

13

of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Whitley*, 104 S.W.3d at 543 (quoting *Bossley*, 968 S.W.2d at 343); *see also Miller*, 51 S.W.3d at 590; *Starkey*, 104 S.W.3d at 628-29. Second, injuries arising from supervision of bus passengers do not arise from the operation or use of a vehicle. *See Montoya*, 177 S.W.3d at 336-39. Third, passenger injuries attributable to a bus driver's decisions and actions regarding whether and when passengers disembark the bus, and their safety in doing so, are considered supervisory in nature. *Whitley*, 104 S.W.3d at 542-43; *Ransom*, 2 S.W.3d at 645; *Goston*, 853 S.W.2d at 733; *see also King*, 2003 Tex. App. LEXIS 6346, at *12. Only where the injuries arise from some "affirmative action" actually using or operating the bus is immunity waived. *Gutierrez*, 54 S.W.3d at 866-67; *Willis*, 163 S.W.3d at 817.

In her briefing, Newman characterizes her central "use" allegation to be that Lopez and Morua failed or refused to "look in their bus to assure that Plaintiff Newman was off the bus and in school," which she characterizes as an aspect of the use of the bus to transport R. N. to school. Under the legal principles we surveyed above, we would be inclined to agree with Elgin I.S.D. that such allegations refer only to injuries arising from a failure to supervise, not from a use or operation of the bus itself. The sole "affirmative action" identified in Newman's brief is the following: "the Plaintiff's injuries resulted exclusively from the Defendants' failure to unload her from the motor-driven vehicle, an affirmative action on the Defendants' behalf." That affirmative action establishes only that the bus happened to be the location of R. N.'s injuries attributable to Elgin I.S.D.'s negligent supervision, and would not establish a waiver of immunity. *See Whitley*, 104 S.W.3d at

14

543 (quoting *Bossley*, 968 S.W.2d at 343); *see also Miller*, 51 S.W.3d at 590; *Starkey*, 104 S.W.3d at 628-29.

However, we have also determined that Newman's pleadings, broadly construed, sufficiently allege that R. N. and Newman were injured by the negligent locking of the bus door. This action, as previously stated, is a use of the bus. The alleged negligent locking of the bus door is akin to the negligent use of the bus horn we identified as a basis for waiver in *Gutierrez* and distinguishes Newman's allegations from those stating merely injuries caused by negligent supervision.

For this reason, we conclude that the Newmans have alleged a valid waiver of sovereign immunity and that the district court did not err in denying Elgin I.S.D.'s plea to the jurisdiction. We overrule Elgin I.S.D.'s issues on appeal.

**CONCLUSION**

We affirm the district court's order denying Elgin I.S.D.'s plea to the jurisdiction.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: March 2, 2006

15