TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00116-CV






Sheila Morales, Individually and as Personal Representative of the Estate of 

Leonel Morales, Deceased, Appellant


v.


Michael Barnett and Luling Independent School District, Appellees






FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT

NO. 04-MV-402, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING



 

O P I N I O N


 This appeal arises from the dismissal for lack of jurisdiction of appellant
Sheila Morales's claim under the Texas Tort Claims Act (1) for damages resulting from the death of
her minor son, Leonel. Morales urges that the trial court erred in granting appellee
Luling Independent School District's (Luling ISD) plea to the jurisdiction on the basis of
governmental immunity and that dismissal was inappropriate. (2) Because we conclude that Morales
failed to allege a valid waiver of immunity, we affirm the trial court's order of dismissal.


FACTUAL AND PROCEDURAL BACKGROUND

 Morales's son, Leonel, was a member of the Luling ISD cross country track team.  On
October 11, 2003, Leonel and his teammates warmed up by running on the eastbound shoulder of
Highway 90, a two-lane highway with paved shoulders on each side. Their coach, Michael Barnett,
followed the team in his personal vehicle on the westbound shoulder of the highway. At
approximately 7:00 a.m., the cross country team finished warming up and gathered on the eastbound
shoulder just off of the highway. Barnett stopped his vehicle on the opposite shoulder of the
highway, activated his hazard lights, and exited the vehicle. At approximately 7:11 a.m., while
Barnett and the cross country team stood off of the highway, a vehicle operated by Juan Flores, an
area resident, moved onto the eastbound shoulder and struck four cross country team members,
killing Leonel Morales.

 According to the investigating officer's report, Flores had noticed Barnett's parked
vehicle on the westbound shoulder as well as an oncoming vehicle approaching Barnett's vehicle,
and Flores moved onto the eastbound shoulder to allow the oncoming vehicle more room to pass
Barnett's parked vehicle. In the early morning, low-light conditions, Flores had moved completely
onto the shoulder before observing the students standing there.

 Morales filed suit against Barnett and Luling ISD, contending that Barnett, while in
the course and scope of his employment with Luling ISD, negligently operated the hazard flashers
on his motor vehicle and that his negligence proximately caused Leonel's death and Morales's
damages. Specifically, Morales alleged that Barnett's activation of the hazard flashers "creat[ed] a
common passing situation wherein one vehicle courteously moves onto the opposite shoulder to
allow another vehicle more room to pass the vehicle on the shoulder with hazard flashers activated." 
Morales maintained that this situation falls within the Texas Tort Claims Act's waiver of
governmental immunity in section 101.021, which provides in relevant part that:


 A governmental unit in the state is liable for:


 (1) property damage, personal injury, and death proximately caused by the
wrongful act or omission or the negligence of an employee acting within his
scope of employment if:


 (A) the property damage, personal injury, or death arises from the
operation or use of a motor-driven vehicle or motor-driven
equipment; and


 (B) the employee would be personally liable to the claimant according to
Texas law . . . .

 

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (West 2005); see also id. § 101.051 (West 2005)
(exempting school districts from Tort Claims Act waivers of immunity "except as to
motor vehicles").

 In response, Luling ISD and Barnett filed an answer and a motion to dismiss the
claims against Barnett pursuant to section 101.106. See id. § 101.106(e) (West 2005) (requiring
dismissal of suit against governmental employee when suit is filed against both the employee and
the governmental entity). The trial court granted the motion and dismissed the claims against
Barnett. Luling ISD subsequently filed a plea to the jurisdiction asserting governmental immunity
and failure to exhaust administrative remedies, and in support of the plea, Luling ISD submitted
jurisdictional evidence. Morales filed a response, but offered no jurisdictional evidence of her own. 
The district court granted Luling ISD's plea to the jurisdiction and dismissed the case. The
court issued findings of fact and conclusions of law, showing that the court granted Luling ISD's
plea to the jurisdiction on the ground of governmental immunity but not on failure to exhaust
administrative remedies.


ANALYSIS

 In a single issue on appeal, Morales contends that the district court erred in granting
Luling ISD's plea to the jurisdiction. Sovereign immunity is properly asserted in a plea to the
jurisdiction and deprives a trial court of subject matter jurisdiction for lawsuits in which the state or
certain governmental units have been sued unless the state consents to suit. Texas Dep't of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 224, 226 (Tex. 2004). Whether a court has subject matter
jurisdiction is a question of law subject to de novo review. Texas Natural Res. Conservation
Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). The Texas Tort Claims Act "provides a
limited waiver of sovereign immunity, allowing suits to be brought against governmental units only
in certain, narrowly defined circumstances." Texas Dep't of Crim. Justice v. Miller, 51 S.W.3d
583, 587 (Tex. 2001). In a suit against a governmental unit, the plaintiff must affirmatively
demonstrate the court's jurisdiction by alleging a valid waiver of immunity. Dallas Area Rapid
Transit v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003). To determine whether the plaintiff has met
that burden, we consider the facts alleged by the plaintiff and, to the extent it is relevant to the
jurisdictional issue, the evidence submitted by the parties. Texas Natural Res. Conservation
Comm'n v. White, 46 S.W.3d 864, 868 (Tex. 2001).

 In its plea to the jurisdiction, Luling ISD asserted that there had been no waiver of
its governmental immunity because there was no operation or use of a motor vehicle falling within 

the Tort Claims Act and because no school district employee would be personally liable to Morales
under Texas law. Luling ISD also maintained that the district court lacked jurisdiction because
Morales failed to exhaust administrative remedies. Because we conclude there was no actionable
operation or use of a motor vehicle, we do not address Luling ISD's other jurisdictional grounds.

 The Tort Claims Act waives immunity for "death proximately caused by the wrongful
act or omission or the negligence of an employee acting within his scope of employment if . . . death
arises from the operation or use of a motor-driven vehicle. . . ." Tex. Civ. Prac. & Rem. Code Ann.
§ 101.021(1) (emphasis added). "Operation" refers to "a doing or performing of practical work,"
and "use" means "to put or bring into action or service; to employ for or apply to a given purpose." (3)
 
LeLeaux v. Hamshire-Fannett Indep. Sch. Dist., 835 S.W.2d 49, 51 (Tex. 1992). The phrase "arises
from" requires a "nexus" between the injury negligently caused by a governmental employee and the
operation or use of the motor-driven vehicle, id., and has further been described as requiring a
"direct nexus." City of Sugarland v. Ballard, 174 S.W.3d 259, 265-66 (Tex. App.--Houston
[1st Dist.] 2005, no pet.); Ector County v. Breedlove, 168 S.W.3d 864, 866 (Tex. App.--Eastland
2004, no pet.). This nexus requires more than mere involvement or proximity of a vehicle. 
Elgin Indep. Sch. Dist. v. R.N., 191 S.W.3d 263, 269 (Tex. App.--Austin 2006, no pet.). For
liability to attach, the supreme court has held that the use of the vehicle "must have actually caused
the injury." Whitley, 104 S.W.3d at 543 (citing White, 46 S.W.3d at 869). The operation or use of
a motor vehicle does not cause injury if it does no more than furnish a condition that makes the
injury possible. Id.

 In support of her argument that activation of the hazard flashers on Barnett's vehicle
created a waiver of immunity under the Tort Claims Act, Morales relies on Austin Independent
School District v. Gutierrez, 54 S.W.3d 860 (Tex. App.--Austin 2001, pet. denied), and Elgin I.S.D.,
191 S.W.3d 263. In Gutierrez, the driver of a school bus dropped off a child across the street from
the child's house. 54 S.W.3d at 861. The driver honked the bus's horn to signal to the child that it
was safe to cross the street; however, when the child crossed the street, she was hit and killed by a
third-party vehicle driven by a drunk driver. Id. The child's mother filed suit, alleging that the use
of the horn to signal her daughter to cross when it was not safe to do so involved negligent use or
operation of the bus. Id. The school district filed a plea to the jurisdiction, and the trial court denied
the plea. Id. This Court affirmed, holding that the school district did not establish as a matter of law
that the bus driver's honking of the school bus's horn did not constitute "use" or "operation" of a
motor vehicle. Id. at 867.

 In Elgin I.S.D., the plaintiff alleged that her daughter had fallen asleep on the bus ride
to school, and upon arrival at the school, the bus driver and bus monitor failed to unload the child
from the bus and locked her inside the bus for several hours without adequate ventilation, water, and
supervision. 191 S.W.3d at 265. The school district filed a plea to the jurisdiction, and the district
court denied the plea. Id. This Court affirmed, comparing the alleged negligent locking of the door
to the negligent honking of the horn in Gutierrez and, thus, concluding that the plaintiff had alleged
an actionable use of the bus. Id. at 272.

 Morales argues that Barnett's activation of the hazard flashers is akin to the honking
of the horn in Gutierrez and the locking of the bus door in Elgin I.S.D. However, even if employing
the flashers could constitute a use of the vehicle in this case, the Tort Claims Act also requires that
the injury arise from the use. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A). In Gutierrez,
the plaintiff alleged that the honking of the horn contributed to the accident by confusing the child
crossing the street as well as the drunk driver that hit her, 54 S.W.3d at 864, and in Elgin I.S.D., the
plaintiff alleged that the locking of the bus door contributed to the child's injuries by causing her to
be trapped inside the bus when she otherwise could have exited. 191 S.W.3d at 268. The procedural
histories in both Gutierrez and Elgin I.S.D. differ from that in the instant case. In those cases, neither
party submitted jurisdictional evidence, and the plaintiffs' pleadings did not affirmatively negate
jurisdiction. In this case, Morales's petition included exhibits, and Luling ISD submitted
jurisdictional evidence. Thus, unlike in Gutierrez and Elgin I.S.D. in which we looked solely to the
allegations in the plaintiffs' pleadings, here we must also consider the evidence submitted by the
parties to the extent it is relevant to the jurisdictional issue. See White, 46 S.W.3d at 868.

 Morales alleges in her petition that the activation of the hazard lights caused "a
common passing situation wherein one vehicle courteously moves onto the opposite shoulder to
allow another vehicle more room to pass the vehicle on the shoulder with hazard flashers activated." 
But the jurisdictional evidence conclusively negates the existence of the required nexus between the
hazard flashers and Leonel Morales's death. See Miranda, 133 S.W.3d at 228. Morales's petition
alleges, and the evidence undisputedly shows, that it was a vehicle operated by Juan Flores that
struck and killed Leonel Morales. At the time of the accident, Barnett's vehicle was parked on the
opposite shoulder and was not a part of the collision. In the accident report, which is attached as part
of an exhibit to Morales's first amended petition, the responding officer stated that while traveling
east Flores noticed Barnett's vehicle on the westbound shoulder, saw a vehicle traveling westbound,
and "moved onto the shoulder of the road in an effort to allow the [oncoming] vehicle more room
to pass." There is no mention of the hazard flashers. The report identifies the "factors/conditions
contributing" to the accident as Flores's faulty evasive action and driver inattention, (4) but lists no
factors with respect to Barnett's vehicle, and Barnett did not receive any traffic citations. There is
no evidence that Barnett's activation of the hazard flashers was itself negligent. See Hitchcock v.
Garvin, 738 S.W.2d 34, 36 (Tex. App.--Dallas 1987, no writ) (school bus driver's negligent failure
to activate flashing lights before students crossed street waived sovereign immunity). In contrast to
Gutierrez and Elgin I.S.D., where no evidence was presented, the evidence in this case conclusively
negates the existence of the required nexus.


 At most, the evidence establishes that the hazard flashers signaled the location of
Barnett's vehicle. It was where Barnett parked his vehicle on Highway 90, and its relation to the
location of the cross country team, that potentially created the "common passing situation" Morales
alleges and triggered the sequence of events causing Flores to drive onto the opposite shoulder and
into the team. But Morales does not allege that where and how Barnett parked his vehicle is a "use"
or "operation" from which the accident arose. Moreover, the undisputed jurisdictional evidence
establishes that (1) Barnett's vehicle was parked completely off the roadway; and (2) Barnett's
decisions regarding where the team ran, whether to follow the team along Highway 90 in his vehicle,
the location of his vehicle relative to where the team was running, and whether and where to stop
and offer instruction were supervisory in nature, and cannot give rise to a waiver of governmental
immunity. See Whitley, 104 S.W.3d at 542-43.

 In an affidavit attached to Luling ISD's plea to the jurisdiction, Barnett averred
without dispute that he had parked his vehicle in a manner such that his "entire vehicle was out of
the lane of traffic. The entire vehicle was to the outside of the solid white line that designated the
paved shoulder of the road." (5) In addition, a diagram of the accident scene that was included with
the accident report showed that Barnett's vehicle was completely out of the lane of traffic.

 Barnett also averred without dispute that his official duties as cross country coach
"included making daily determinations on where, when, and how long the team should practice [and]
whether to run with the team, follow behind the team in a personal vehicle, or park the vehicle on
the side of the road to talk to the team. Such decisions were left solely to my judgment and
discretion." Barnett added that "I am responsible for determining the most appropriate running route
each day [and] . . . must also determine whether I will run the practice route with the team, follow
the team closely in my personal vehicle for supervision purposes, or whether I will meet the team
at the halfway point, or some other point, to assess the condition of the team members and administer
aid and water as needed." Barnett also explained that


 [o]nce on Highway 90, as instructed by me and which was my usual practice, the
students ran on the shoulder of the left-hand side of Highway 90, while I followed
behind them in my personal vehicle on the shoulder of the right-hand side of
Highway 90. The reason I instructed the students to run on the left-hand side of
Highway 90 was so that they would have a clear view of any on-coming traffic. This
instruction is common practice among cross country coaches for school districts in
the State of Texas. By following the students on the shoulder of the right-hand side
of Highway 90, I had a clear view of the students' progress so that I could ascertain
whether and what instruction should be offered to the students.



 On this record, Barnett's decisions regarding where and how he supervised his team
on its run and stopped to give instruction are analogous to the decisions of bus drivers regarding
where to stop the bus to allow passengers to board or disembark, which have been held to be
"supervisory" in nature and not to involve an "operation" or "use" capable of giving rise to a waiver
of immunity. See, e.g., Whitley, 104 S.W.3d at 542-43 (bus driver's decision to let off two fighting
passengers within two blocks of each other, leading to beating of one passenger by other and her
"cohorts" "arose from the bus driver's failure to supervise the public, which is insufficient to waive
immunity under the Tort Claims Act."); Elgin I.S.D., 191 S.W.3d at 272 ("[P]assenger injuries
attributable to a bus driver's decisions and actions regarding whether and when passengers
disembark the bus, and their safety in doing so, are considered supervisory in nature."). In other
words, this record establishes that the location of Barnett's vehicle did no more than furnish a
condition that made the injury possible. See Whitley, 104 S.W.3d at 543.

 For these reasons, even assuming that Barnett's activation of his vehicle's hazard
flashers constituted an operation or use of a motor vehicle, it would not have the required nexus to
Leonel Morales's death. The Tort Claims Act does not waive governmental immunity under these
circumstances. See Whitley, 104 S.W.3d at 542-43; Elgin I.S.D., 191 S.W.3d at 272.


CONCLUSION

 We conclude from our de novo review of Morales's petition and the relevant
jurisdictional evidence that Morales failed to allege a valid waiver of immunity because there is no
nexus between the operation or use alleged--the activation of the hazard flashers--and Leonel
Morales's death. We therefore conclude that the Tort Claims Act does not waive Luling ISD's
governmental immunity, and we affirm the trial court's order of dismissal.




 

 Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: February 21, 2007

1. See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 2005 & Supp. 2006).
2. Morales also sued Michael Barnett, the coach of her son's cross country track team, but the
claims against him were dismissed pursuant to section 101.106 of the Tort Claims Act, see id.
§ 101.106 (West 2005), and he is not a party to this appeal.
3. Luling ISD argues that Morales's petition alleged that activation of the hazard flashers was
an "operation" by Barnett, but failed to allege it was a "use." However, when reviewing a plea to
the jurisdiction, we "construe the pleadings liberally in favor of the plaintiffs and look to the
pleaders' intent." Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). 
Although Morales's petition does not include the word "use," a plaintiff is required to plead
facts invoking a waiver of immunity, not to use particular magic words. See University of N. Tex.
v. Harvey, 124 S.W.3d 216, 223 n.3 (Tex. App.--Fort Worth 2003, pet. denied). In her response to
Luling ISD's plea to the jurisdiction and at the hearing on the plea, Morales argued that activation
of the hazard flashers constituted both an operation and a use, and we will consider both.

4. Driver inattention is further shown by the fact that the driver of the oncoming vehicle to
which Flores attempted to give more room timely noticed Barnett's vehicle on the westbound
shoulder, the students on the eastbound shoulder, and Flores's vehicle moving toward the students. 
In an effort to give Flores more room to avoid the students, the oncoming driver immediately drove
into the bar ditch on his right prior to reaching Barnett's vehicle.
5. A decision of one of our sister courts may imply that even if Barnett's vehicle had
protruded onto the traffic lanes of Highway 90, it would still not give rise to a waiver of sovereign
immunity. In a case similar to the one at hand, a Houston court of appeals found no waiver of
governmental immunity when the plaintiff, who had been placed in the back of a patrol car with its
emergency lights activated, was injured when a driver rear-ended a second patrol car--also with its
lights activated--that was parked behind the one occupied by the plaintiff. City of Kemah v. Vela,
149 S.W.3d 199, 201 (Tex. App.--Houston [14th Dist.] 2004, pet. denied). In Vela, the plaintiff
alleged the officers negligently parked their vehicles in a left-turn lane and, but for the officers'
operation or use of the patrol vehicle to house him, his injuries would not have occurred. Id. at 204. 
The court held that placing the plaintiff in an improperly parked car did not cause the plaintiff's
injuries; rather, it was the third-party driver who caused the injuries "when he ignored the flashing
lights of two police cars and ran into [the officer's] patrol car." Id. While the complained-of use
in Vela was not the use of the emergency vehicle's flashing lights, the court was able to determine
from the undisputed facts that, as a matter of law, sovereign immunity was not waived even if the
officers improperly parked their patrol cars. Id. at 205. We need not decide, however, if Vela's
rationale applies here because the jurisdictional evidence establishes other grounds for affirming the
trial court's judgment.