# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-06-00116-CV

**Sheila Morales, Individually and as Personal Representative of the Estate of Leonel Morales, Deceased, Appellant**

**v.**

**Michael Barnett and Luling Independent School District, Appellees**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT NO. 04-MV-402, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

### O P I N I O N

This appeal arises from the dismissal for lack of jurisdiction of appellant Sheila Morales's claim under the Texas Tort Claims Act[1] for damages resulting from the death of her minor son, Leonel. Morales urges that the trial court erred in granting appellee Luling Independent School District's (Luling ISD) plea to the jurisdiction on the basis of governmental immunity and that dismissal was inappropriate.[2] Because we conclude that Morales failed to allege a valid waiver of immunity, we affirm the trial court's order of dismissal.

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 2005 & Supp. 2006).

[2] Morales also sued Michael Barnett, the coach of her son's cross country track team, but the claims against him were dismissed pursuant to section 101.106 of the Tort Claims Act, *see id.* § 101.106 (West 2005), and he is not a party to this appeal.

**FACTUAL AND PROCEDURAL BACKGROUND**

Morales's son, Leonel, was a member of the Luling ISD cross country track team. On October 11, 2003, Leonel and his teammates warmed up by running on the eastbound shoulder of Highway 90, a two-lane highway with paved shoulders on each side. Their coach, Michael Barnett, followed the team in his personal vehicle on the westbound shoulder of the highway. At approximately 7:00 a.m., the cross country team finished warming up and gathered on the eastbound shoulder just off of the highway. Barnett stopped his vehicle on the opposite shoulder of the highway, activated his hazard lights, and exited the vehicle. At approximately 7:11 a.m., while Barnett and the cross country team stood off of the highway, a vehicle operated by Juan Flores, an area resident, moved onto the eastbound shoulder and struck four cross country team members, killing Leonel Morales.

According to the investigating officer's report, Flores had noticed Barnett's parked vehicle on the westbound shoulder as well as an oncoming vehicle approaching Barnett's vehicle, and Flores moved onto the eastbound shoulder to allow the oncoming vehicle more room to pass Barnett's parked vehicle. In the early morning, low-light conditions, Flores had moved completely onto the shoulder before observing the students standing there.

Morales filed suit against Barnett and Luling ISD, contending that Barnett, while in the course and scope of his employment with Luling ISD, negligently operated the hazard flashers on his motor vehicle and that his negligence proximately caused Leonel's death and Morales's damages. Specifically, Morales alleged that Barnett's activation of the hazard flashers "creat[ed] a common passing situation wherein one vehicle courteously moves onto the opposite shoulder to

2

allow another vehicle more room to pass the vehicle on the shoulder with hazard flashers activated."

Morales maintained that this situation falls within the Texas Tort Claims Act's waiver of governmental immunity in section 101.021, which provides in relevant part that:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law . . . .

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (West 2005); *see also id.* § 101.051 (West 2005) (exempting school districts from Tort Claims Act waivers of immunity "except as to motor vehicles").

In response, Luling ISD and Barnett filed an answer and a motion to dismiss the claims against Barnett pursuant to section 101.106. *See id.* § 101.106(e) (West 2005) (requiring dismissal of suit against governmental employee when suit is filed against both the employee and the governmental entity). The trial court granted the motion and dismissed the claims against Barnett. Luling ISD subsequently filed a plea to the jurisdiction asserting governmental immunity and failure to exhaust administrative remedies, and in support of the plea, Luling ISD submitted jurisdictional evidence. Morales filed a response, but offered no jurisdictional evidence of her own.

3

The district court granted Luling ISD's plea to the jurisdiction and dismissed the case. The court issued findings of fact and conclusions of law, showing that the court granted Luling ISD's plea to the jurisdiction on the ground of governmental immunity but not on failure to exhaust administrative remedies.

**ANALYSIS**

In a single issue on appeal, Morales contends that the district court erred in granting Luling ISD's plea to the jurisdiction. Sovereign immunity is properly asserted in a plea to the jurisdiction and deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224, 226 (Tex. 2004). Whether a court has subject matter jurisdiction is a question of law subject to *de novo* review. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). The Texas Tort Claims Act "provides a limited waiver of sovereign immunity, allowing suits to be brought against governmental units only in certain, narrowly defined circumstances." *Texas Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). To determine whether the plaintiff has met that burden, we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties. *Texas Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001).

In its plea to the jurisdiction, Luling ISD asserted that there had been no waiver of its governmental immunity because there was no operation or use of a motor vehicle falling within the Tort Claims Act and because no school district employee would be personally liable to Morales under Texas law. Luling ISD also maintained that the district court lacked jurisdiction because Morales failed to exhaust administrative remedies. Because we conclude there was no actionable operation or use of a motor vehicle, we do not address Luling ISD's other jurisdictional grounds.

The Tort Claims Act waives immunity for "death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if . . . death *arises from the operation or use* of a motor-driven vehicle. . . ." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (emphasis added). "Operation" refers to "a doing or performing of practical work," and "use" means "to put or bring into action or service; to employ for or apply to a given purpose."[3] *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992). The phrase "arises from" requires a "nexus" between the injury negligently caused by a governmental employee and the operation or use of the motor-driven vehicle, *id.*, and has further been described as requiring a "direct nexus." *City of Sugarland v. Ballard*, 174 S.W.3d 259, 265-66 (Tex. App.—Houston

---

[3] Luling ISD argues that Morales's petition alleged that activation of the hazard flashers was an "operation" by Barnett, but failed to allege it was a "use." However, when reviewing a plea to the jurisdiction, we "construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Although Morales's petition does not include the word "use," a plaintiff is required to plead facts invoking a waiver of immunity, not to use particular magic words. *See University of N. Tex. v. Harvey*, 124 S.W.3d 216, 223 n.3 (Tex. App.—Fort Worth 2003, pet. denied). In her response to Luling ISD's plea to the jurisdiction and at the hearing on the plea, Morales argued that activation of the hazard flashers constituted both an operation and a use, and we will consider both.

5

[1st Dist.] 2005, no pet.); *Ector County v. Breedlove*, 168 S.W.3d 864, 866 (Tex. App.—Eastland 2004, no pet.). This nexus requires more than mere involvement or proximity of a vehicle. *Elgin Indep. Sch. Dist. v. R.N.*, 191 S.W.3d 263, 269 (Tex. App.—Austin 2006, no pet.). For liability to attach, the supreme court has held that the use of the vehicle "must have actually caused the injury." *Whitley*, 104 S.W.3d at 543 (citing *White*, 46 S.W.3d at 869). The operation or use of a motor vehicle does not cause injury if it does no more than furnish a condition that makes the injury possible. *Id.*

In support of her argument that activation of the hazard flashers on Barnett's vehicle created a waiver of immunity under the Tort Claims Act, Morales relies on *Austin Independent School District v. Gutierrez*, 54 S.W.3d 860 (Tex. App.—Austin 2001, pet. denied), and *Elgin I.S.D.*, 191 S.W.3d 263. In *Gutierrez*, the driver of a school bus dropped off a child across the street from the child's house. 54 S.W.3d at 861. The driver honked the bus's horn to signal to the child that it was safe to cross the street; however, when the child crossed the street, she was hit and killed by a third-party vehicle driven by a drunk driver. *Id.* The child's mother filed suit, alleging that the use of the horn to signal her daughter to cross when it was not safe to do so involved negligent use or operation of the bus. *Id.* The school district filed a plea to the jurisdiction, and the trial court denied the plea. *Id.* This Court affirmed, holding that the school district did not establish as a matter of law that the bus driver's honking of the school bus's horn did not constitute "use" or "operation" of a motor vehicle. *Id.* at 867.

In *Elgin I.S.D.*, the plaintiff alleged that her daughter had fallen asleep on the bus ride to school, and upon arrival at the school, the bus driver and bus monitor failed to unload the child

6

from the bus and locked her inside the bus for several hours without adequate ventilation, water, and supervision. 191 S.W.3d at 265. The school district filed a plea to the jurisdiction, and the district court denied the plea. *Id.* This Court affirmed, comparing the alleged negligent locking of the door to the negligent honking of the horn in *Gutierrez* and, thus, concluding that the plaintiff had alleged an actionable use of the bus. *Id.* at 272.

Morales argues that Barnett's activation of the hazard flashers is akin to the honking of the horn in *Gutierrez* and the locking of the bus door in *Elgin I.S.D.* However, even if employing the flashers could constitute a use of the vehicle in this case, the Tort Claims Act also requires that the injury arise from the use. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A). In *Gutierrez*, the plaintiff alleged that the honking of the horn contributed to the accident by confusing the child crossing the street as well as the drunk driver that hit her, 54 S.W.3d at 864, and in *Elgin I.S.D.*, the plaintiff alleged that the locking of the bus door contributed to the child's injuries by causing her to be trapped inside the bus when she otherwise could have exited. 191 S.W.3d at 268. The procedural histories in both *Gutierrez* and *Elgin I.S.D.* differ from that in the instant case. In those cases, neither party submitted jurisdictional evidence, and the plaintiffs' pleadings did not affirmatively negate jurisdiction. In this case, Morales's petition included exhibits, and Luling ISD submitted jurisdictional evidence. Thus, unlike in *Gutierrez* and *Elgin I.S.D.* in which we looked solely to the allegations in the plaintiffs' pleadings, here we must also consider the evidence submitted by the parties to the extent it is relevant to the jurisdictional issue. *See White*, 46 S.W.3d at 868.

Morales alleges in her petition that the activation of the hazard lights caused "a common passing situation wherein one vehicle courteously moves onto the opposite shoulder to

7

allow another vehicle more room to pass the vehicle on the shoulder with hazard flashers activated." But the jurisdictional evidence conclusively negates the existence of the required nexus between the hazard flashers and Leonel Morales's death. *See Miranda*, 133 S.W.3d at 228. Morales's petition alleges, and the evidence undisputedly shows, that it was a vehicle operated by Juan Flores that struck and killed Leonel Morales. At the time of the accident, Barnett's vehicle was parked on the opposite shoulder and was not a part of the collision. In the accident report, which is attached as part of an exhibit to Morales's first amended petition, the responding officer stated that while traveling east Flores noticed Barnett's vehicle on the westbound shoulder, saw a vehicle traveling westbound, and "moved onto the shoulder of the road in an effort to allow the [oncoming] vehicle more room to pass." There is no mention of the hazard flashers. The report identifies the "factors/conditions contributing" to the accident as Flores's faulty evasive action and driver inattention,[4] but lists no factors with respect to Barnett's vehicle, and Barnett did not receive any traffic citations. There is no evidence that Barnett's activation of the hazard flashers was itself negligent. *See Hitchcock v. Garvin*, 738 S.W.2d 34, 36 (Tex. App.—Dallas 1987, no writ) (school bus driver's negligent *failure* to activate flashing lights before students crossed street waived sovereign immunity). In contrast to *Gutierrez* and *Elgin I.S.D.*, where no evidence was presented, the evidence in this case conclusively negates the existence of the required nexus.

---

[4] Driver inattention is further shown by the fact that the driver of the oncoming vehicle to which Flores attempted to give more room timely noticed Barnett's vehicle on the westbound shoulder, the students on the eastbound shoulder, and Flores's vehicle moving toward the students. In an effort to give Flores more room to avoid the students, the oncoming driver immediately drove into the bar ditch on his right prior to reaching Barnett's vehicle.

At most, the evidence establishes that the hazard flashers signaled the location of Barnett's vehicle. It was *where Barnett parked his vehicle* on Highway 90, and its relation to the location of the cross country team, that potentially created the "common passing situation" Morales alleges and triggered the sequence of events causing Flores to drive onto the opposite shoulder and into the team. But Morales does not allege that where and how Barnett parked his vehicle is a "use" or "operation" from which the accident arose. Moreover, the undisputed jurisdictional evidence establishes that (1) Barnett's vehicle was parked completely off the roadway; and (2) Barnett's decisions regarding where the team ran, whether to follow the team along Highway 90 in his vehicle, the location of his vehicle relative to where the team was running, and whether and where to stop and offer instruction were supervisory in nature, and cannot give rise to a waiver of governmental immunity. *See Whitley*, 104 S.W.3d at 542-43.

In an affidavit attached to Luling ISD's plea to the jurisdiction, Barnett averred without dispute that he had parked his vehicle in a manner such that his "entire vehicle was out of the lane of traffic. The entire vehicle was to the outside of the solid white line that designated the paved shoulder of the road."[5] In addition, a diagram of the accident scene that was included with

---

[5] A decision of one of our sister courts may imply that even if Barnett's vehicle had protruded onto the traffic lanes of Highway 90, it would still not give rise to a waiver of sovereign immunity. In a case similar to the one at hand, a Houston court of appeals found no waiver of governmental immunity when the plaintiff, who had been placed in the back of a patrol car with its emergency lights activated, was injured when a driver rear-ended a second patrol car—also with its lights activated—that was parked behind the one occupied by the plaintiff. *City of Kemah v. Vela*, 149 S.W.3d 199, 201 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). In *Vela*, the plaintiff alleged the officers negligently parked their vehicles in a left-turn lane and, but for the officers' operation or use of the patrol vehicle to house him, his injuries would not have occurred. *Id.* at 204. The court held that placing the plaintiff in an improperly parked car did not cause the plaintiff's injuries; rather, it was the third-party driver who caused the injuries "when he ignored the flashing

9

the accident report showed that Barnett's vehicle was completely out of the lane of traffic.

Barnett also averred without dispute that his official duties as cross country coach "included making daily determinations on where, when, and how long the team should practice [and] whether to run with the team, follow behind the team in a personal vehicle, or park the vehicle on the side of the road to talk to the team. Such decisions were left solely to my judgment and discretion." Barnett added that "I am responsible for determining the most appropriate running route each day [and] . . . must also determine whether I will run the practice route with the team, follow the team closely in my personal vehicle for supervision purposes, or whether I will meet the team at the halfway point, or some other point, to assess the condition of the team members and administer aid and water as needed." Barnett also explained that

> [o]nce on Highway 90, as instructed by me and which was my usual practice, the students ran on the shoulder of the left-hand side of Highway 90, while I followed behind them in my personal vehicle on the shoulder of the right-hand side of Highway 90. The reason I instructed the students to run on the left-hand side of Highway 90 was so that they would have a clear view of any on-coming traffic. This instruction is common practice among cross country coaches for school districts in the State of Texas. By following the students on the shoulder of the right-hand side of Highway 90, I had a clear view of the students' progress so that I could ascertain whether and what instruction should be offered to the students.

---

lights of two police cars and ran into [the officer's] patrol car." *Id.* While the complained-of use in *Vela* was not the use of the emergency vehicle's flashing lights, the court was able to determine from the undisputed facts that, as a matter of law, sovereign immunity was not waived even if the officers improperly parked their patrol cars. *Id.* at 205. We need not decide, however, if *Vela*'s rationale applies here because the jurisdictional evidence establishes other grounds for affirming the trial court's judgment.

On this record, Barnett's decisions regarding where and how he supervised his team on its run and stopped to give instruction are analogous to the decisions of bus drivers regarding where to stop the bus to allow passengers to board or disembark, which have been held to be "supervisory" in nature and not to involve an "operation" or "use" capable of giving rise to a waiver of immunity. *See, e.g.*, *Whitley*, 104 S.W.3d at 542-43 (bus driver's decision to let off two fighting passengers within two blocks of each other, leading to beating of one passenger by other and her "cohorts" "arose from the bus driver's failure to supervise the public, which is insufficient to waive immunity under the Tort Claims Act."); *Elgin I.S.D.*, 191 S.W.3d at 272 ("[P]assenger injuries attributable to a bus driver's decisions and actions regarding whether and when passengers disembark the bus, and their safety in doing so, are considered supervisory in nature."). In other words, this record establishes that the location of Barnett's vehicle did no more than furnish a condition that made the injury possible. *See Whitley*, 104 S.W.3d at 543.

For these reasons, even assuming that Barnett's activation of his vehicle's hazard flashers constituted an operation or use of a motor vehicle, it would not have the required nexus to Leonel Morales's death. The Tort Claims Act does not waive governmental immunity under these circumstances. *See Whitley*, 104 S.W.3d at 542-43; *Elgin I.S.D.*, 191 S.W.3d at 272.

## CONCLUSION

We conclude from our *de novo* review of Morales's petition and the relevant jurisdictional evidence that Morales failed to allege a valid waiver of immunity because there is no nexus between the operation or use alleged—the activation of the hazard flashers—and Leonel

11

Morales's death.  We therefore conclude that the Tort Claims Act does not waive Luling ISD's governmental immunity, and we affirm the trial court's order of dismissal.


_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   February 21, 2007